## A. SCHRADER'S SON, Inc., v. UNITED STATES.

### No. 3633.

District Court, E. D. New York.
Sept. 16, 1930.

Phillips & Avery, of New York City (John B. Sullivan, Jr., of Boston, Mass., and C. Royall Frazer, of New York City, of counsel), for plaintiff.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (A. D. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Ottamar Hamele, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

BYERS, District Judge.

This case was argued and submitted upon an agreed statement of facts, hereby adopted as the findings herein.

The plaintiff sues to recover the sum of $163,432.32 with interest, being part of an alleged overpayment of income and profits taxes paid by it from 1913 to 1918, inclusive.

The entire amount claimed was $181,-787.85, of which the Commissioner of Internal Revenue has allowed $18,355.53, leaving the sum first mentioned, as the amount in dispute.

The plaintiff owned several patents, which for convenience are divided into two groups: those acquired prior to and owned on March 1, 1913, called the "old" patents, and those acquired subsequent to that date and prior to 1920, called the "new" patents. The latter are not here involved.

The plaintiff failed to make deductions from gross income for depreciation on its patents, in filing its annual returns to the federal government for the several years 1913 to 1919, inclusive.

In 1925, the plaintiff duly filed a claim for refund of an overpayment of income and profits taxes for the year 1919, by reason of its failure to include, in its return for that year, deductions from gross income, representing depreciation upon the said patents; it was asserted in that claim that the fair market value of the "old" patents on March 1, 1913, was greater than their cost, and the Commissioner was requested to establish the said fair market value on that date, and the object of the claim was to obtain an appropriate credit or refund representing the item of depreciation, composed of two elements:

(a) That based upon the said fair market value on March 1, 1913, of the "old" patents;

(b) That based upon the cost of the "new" patents.

The proceedings before the Commissioner established that, as to the first element, the fair market value of the "old" patents on March 1, 1913, was $1,547,462.02 and the cost was $287,300.

These figures are acceptable to both parties, and this element alone will be discussed, as there is no controversy concerning depreciation of the "new" patents, based upon cost.

The rate of annual depreciation on the "old" patents was similarly established, and for 1919 was represented by the fraction 373/5655.

The Commissioner redetermined the plaintiff's taxable income for 1919, and allowed a deduction, from gross income for that year, for depreciation of patents, based upon the fair market value on March 1, 1913, as to the "old" patents.

The recognition of this depreciation required a reduction of invested capital for 1919, because that item embraced patents; this, in turn, necessitated a revision or reconstruction of invested capital from 1913 forward, so that accurate figures might be used for each of the years during which the profits taxes were levied (1917–1921).

**621**

The Commissioner, therefore, set up the 1913 invested capital of the plaintiff so as to include the "old" patents at their cost on March 1, 1913, of $287,300, and, from this figure, he has allowed annual depreciation at the rate which is stipulated to be correct; in other words, he has decreased the invested capital of the plaintiff company for the six years now under examination, and has employed or allowed depreciation on cost, rather than fair market value of the "old" patents. If his action is correct in the legal sense, judgment is to be awarded dismissing the petition. If depreciation should have been allowed on the fair market value basis, judgment is to be awarded to the plaintiff for the amount claimed.

The basis for the action is section 284(c) of the Revenue Act of 1926 (26 USCA § 1065(c), which reads as follows:

"Sec. 284. * * * (c) If the invested capital of a taxpayer is decreased by the commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that there has been an overpayment of income, war-profits, or excess-profits taxes in any previous year or years, then the amount of such overpayment shall be credited or refunded, without the filing of a claim therefor, notwithstanding the period of limitation provided for in subdivision (b) or (g) has expired."

An understanding of the controversy will be promoted by an examination of the opposing theories, which will reveal that the real issue is narrow.

The defendant urges that the recovery of any overpayment made during the six years involved, is a matter of favor, because the period of limitation contained in the Revenue Acts prior to that of 1921 had operated to prevent any refund; therefore, the mitigation or lifting of the bar is a qualified act of leniency on the part of the government, which is necessarily limited to the precise dimensions of the change in invested capital effected by the Commissioner; that the only overpayments by the plaintiff were of profits taxes which were computed upon invested capital; and, finally, that, even if the Commissioner misconstrued his function or his duties, nevertheless his computation, right or wrong, measures the plaintiff's recovery of a refund or credit for taxes overpaid.

The plaintiff contends, if its position is rightly understood, that, so far as its invested capital is concerned during the several years involved, the Commissioner was right in computing the patents item thereof at the cost of the "old" patents on March 1, 1913, but that income taxes during those years were overpaid, because of the plaintiff's failure to compute, for the purpose of that tax, an adequate deduction, and assert the same, namely, the stipulated ratio of depreciation based upon the fair market value of the "old" patents on March 1, 1913; that, because such adequate deductions were not taken for income tax purposes, they should now be refunded because the statute above quoted should be so interpreted.

If the plaintiff is right, judgment should be awarded to it, for the stipulated amount.

An examination of the plaintiff's contention seems to involve at least the following elements:

1. Does the statute contemplate a refund or credit for overpayment of income taxes?

This question can be freely answered in the affirmative, because the statute in terms refers to "an overpayment of income, war-profits, or excess-profits taxes in any previous year."

The same language occurs in section 281 (c) of the Revenue Act of 1924 (26 USCA § 1065 note), referring to the same subject.

The similar statute of 1921, § 252(a), 42 Stat. 268, reads in port as follows:

"Sec. 252(a). * * * That if upon examination of any return of income made pursuant to the Revenue Act of 1917, the Revenue Act of 1918, or this Act, the invested capital of a taxpayer is decreased by the Commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that an amount of income tax in excess of that properly due was paid in any previous year or years, then, notwithstanding any other provision of law and regardless of the expiration of such five-year period, the amount of such excess shall, without the filing of any claim therefor, be credited or refunded as provided in this section: * * * "

Thus clearly it appears that Congress intended to provide for a refund or credit of an overpayment of income taxes in a case in which invested capital had been decreased by the Commissioner, due to the fact that the taxpayer had failed to take adequate deductions in previous years "with the result" that an overpayment of income tax had taken place.

2. Was there an overpayment of income tax by this plaintiff during the six years here involved?

The answer to this question seems to depend upon what constituted an "adequate deduction" which the plaintiff should have taken during these several years, representing depreciation upon the "old" patents.

That the March 1, 1913, fair market value of patents, when satisfactorily established, is the basis upon which depreciation should be figured, appears from the following as reproduced in Montgomery's Income Tax Procedure, 1927, vol. 1, p. 995:

"Ruling. Depreciation as used and applied in connection with the exhaustion of patents is no different from the meaning of that word as applied to strictly tangible assets, such as buildings and machinery, and the allowance for depreciation on such assets acquired prior to March 1, 1913, should be based on their fair market value as of that date, provided that satisfactory evidence of such value is offered by the taxpayer. (C. B. IV-2, 162; S. M. 4110)

"This ruling was made under the 1918 law, but it also applies to subsequent laws. The ruling also held that the Supreme Court decisions in U. S. v. Flannery (268 U. S. 98 [45 S. Ct. 420, 69 L. Ed. 865]), and McCaughn v. Ludington (268 U. S. 106 [45 S. Ct. 423, 69 L. Ed. 868]), should not alter the Treasury's practice of computing depreciation on March 1, 1913, values. See also Gray's Appeal, 2 B. T. A. 672(A)."

The stipulated facts upon which this decision is based assign to the "old" patents a fair market value on March 1, 1913, of $1,547,462.02, which obviously is the result of the submission of satisfactory evidence of such value. Moreover, it is the basis upon which depreciation was computed by the Commissioner in the sum of $102,069.55 as a deduction for income tax purposes, for the year 1919.

A refund based upon the same method of computing depreciation on patents (March 1, 1913, value) was necessary to a judgment rendered by the Court of Claims on February 17, 1930. See Felt & Tarrant Co. v. U. S., 37 F.(2d) 977.

These considerations seem to point to the soundness of the plaintiff's contention, unless the defendant's argument overcomes them.

It is first asserted by the government that the method used by the Commissioner, in computing plaintiff's invested capital, was in fact correct, for the reason that Congress sought to repair a possible inequity arising from a reconstruction by the Commissioner of invested capital, which in turn would control the amount of profits taxes only; consequently the refunding or credit of an overpayment must be restricted to an overpayment of profits taxes. For this reason, it is argued that the initial March 1, 1913, appraisal of the "old" patents was necessarily at the cost figure thereof and subsequent annual depreciation must be computed on that basis, and hence that, as this is what the Commissioner has done, the plaintiff is not entitled to further relief.

It will be seen that this contention involves two elements which require careful consideration:

First. That only profits tax payments could be redetermined as the result of the reconstruction of invested capital.

It has been seen that the language of the statute expressly includes income tax payments for possible refund or credit, when the Commissioner has decreased invested capital. Had Congress intended that overpayments of profits taxes only were to be the subject of a refund under appropriate circumstances, it would have so passed the law.

A good reason for the adoption of the language which was employed, resides in the fact that it was not until the year 1917 that profits taxes were levied, and hence it must be assumed that Congress intended to repair a possible inequity arising from the Commissioner's reconstruction of invested capital, even in the years in which no profits taxes were levied, namely, 1913, 1914, 1915, and 1916. Nor did Congress provide that the overpayment could be of income taxes in those four years, and of profits taxes only in the years when profits taxes were levied. Thus it may be concluded that the statute of 1926, now under examination, means what it says, and not something very much less.

Nor is it easy to perceive how the Commissioner, in this case, could have made any allowance by way of deduction or credit to this plaintiff for the four years, 1913 to 1916, inclusive, if his assertion is true, that only profits taxes were within the contemplation of this statute; and yet that is what he has done, as is shown by paragraphs 11 to 13, inclusive, of the stipulated facts. That is to say, he has found that income taxes were overpaid by the plaintiff during each of those four years, and has refunded the

amounts of such overpayments, according to his computation, using the stipulated ratio of depreciation figured upon the cost of the "old" patents. The allowance of a refund for those four years seems to be incompatible with the contention contained in the government's brief, reading as follows:

"As has been shown, in every instance where the plaintiff failed to take adequate deductions for patent depreciation in connection with invested capital and profits taxes (all that this section is concerned with), the Commissioner has made a full refund. He refuses to make refunds where the plaintiff failed to take adequate deductions for patent depreciation in connection with income taxes, because the section in question has nothing to do with them. As to the latter, the plaintiff is in the same position as any other taxpayer whose claim is barred by the statute."

Nor is this all. It has been hereinbefore stated that a deduction was allowed from gross income for the year 1919 for income tax purposes. The defendant's brief relates this incident in the following language:

"In the adjustment for 1919 the Commissioner used two different methods of computation respecting patents, one for the determination of invested capital, the other for the determination of net income. As to the latter, the Commissioner computed depreciation on the old patents based on their March 1, 1913 value. But as to the former, the Commissioner included the old patents in invested capital at cost, and depreciated them at cost, in accordance with the decision of the Supreme Court in La Belle Iron Works v. United States, 256 U. S. 377 [41 S. Ct. 528, 65 L. Ed. 998]."

Therefore, as to four of the six years now affected, and as to the year immediately following the last of the latter, the Commissioner made refund in 1926 to the plaintiff, based upon overpayments of income taxes. From which, it is concluded that the first element of the contention now under examination is untenable.

Second. That the Commissioner, in reconstructing invested capital as at March 1, 1913, was required to use the cost figures of the "old" patents.

The correctness of the foregoing theory will be assumed, for present purposes.

It is considered, however, that it is not the principles governing the correct constituency of invested capital that determine the "adequate deductions," the failure to take

which during the affected years has brought about the plaintiff's right to relief.

The theory of the defense to the plaintiff's claim, as has been stated, is that overpayment of profits taxes only can be compensated in the event that invested capital is decreased by the Commissioner, and the effort herein has been made to demonstrate that the statute is not so drawn, and has not been so applied by the Commissioner in this case. If the effort has been successful, it results that the major theory of defense is mistaken, and the plaintiff's claim must prevail, unless some reason, not thus far considered, points to a different conclusion.

■ The second position of the government remains to be examined, namely, that, whether the Commissioner was right or wrong, the plaintiff's relief is limited by the deductions (from invested capital) which the Commissioner has made.

It is clear that the excess-profits taxes were responsible for the statute under consideration, and that such taxes were computed upon the basis of invested capital; also, that the decrease thereof alone could give rise to such a claim as this. It is equally clear, however, that there is a relation between income taxes and invested capital which cannot be ignored. The net income, for each year, not distributed in dividends constitutes surplus for that year, and automatically merges into invested capital at the close of the year. If the income tax is larger than it would have been if the taxpayer had deducted from its gross income an adequate depreciation, the surplus for the year is smaller than it ought to be, and hence the invested capital has not received the accretion that should have been added to it. In the belief that the foregoing states, in substance, the reason why Congress refers to an overpayment of income taxes as a result of the decrease in invested capital which is due to the fact that the taxpayer failed to take adequate deductions in previous years, this decision will proceed on the theory that the Commissioner in this case has performed only part of his duty, and that part correctly; that it is the function of the court to direct that the unfulfilled task be now completed.

That a depreciation deduction for income tax purposes during each of the affected years, in order to be adequate, should have been based upon the March 1, 1913, fair market value in excess of cost, has been shown.

Lest it be thought that the result of applying this principle would involve an inconsistency in that the "old" patents are carried for invested capital purposes at the cost on March 1, 1913, but depreciation for income tax purposes is permitted at their then fair market value, a much higher figure, reference should be made to article 844 of the Regulations, whereby it becomes apparent that such a result is automatically adjusted for the purposes of invested capital, thus:

"(2) Where depreciation or depletion is computed on the value as of March 1, 1913, or as of any subsequent date, the proportion of depreciation or depletion representing the realization of appreciation of value at March 1, 1913, or such subsequent date, may if undistributed and used or employed in the business be treated as surplus and included in the computation of invested capital.

"For the purpose of computing invested capital depreciation or depletion computed on the value as of March 1, 1913, or as of any subsequent date shall, if such value exceeded cost, be deemed a pro rata realization of cost and appreciation and be apportioned accordingly. Except as above provided value appreciation (even though evidenced by an appraisal) which has not been actually realized and in respect of amounts accrued since March 1, 1913, reported as income for the purpose of the income tax, can not be included in the computation of invested capital, and if already reflected in the surplus account it must be deducted therefrom."

To the same effect, the Board of Tax Appeals delivered an opinion in the North Iowa Brick & Tile Company Case, 10 B. T. A. 1290, at page 1293, from which the following is taken:

"In the adjustment of invested capital there should be reflected a depletion reserve computed upon the per acre cost of the clay deposits as determined by the findings herein. The allowance of a deduction for depletion should be computed upon the basis of the per acre value of such deposits on March 1, 1913, as found by the respondent and the difference between the depletion deduction computed upon cost and the deductions allowed upon the 1913 value should be restored to surplus for the invested capital computation. Entress Brick Co., 9 B. T. A. 588."

The foregoing quotations demonstrate that the rule of depreciation contended for by the plaintiff is consonant with the accounting practice recognized by the Regulations and enforced by the Board of Tax Appeals.

It is assumed, for the purpose of this decision, that the agreement touching the amount of judgment to be awarded to plaintiff if its contentions should be here upheld, implies from the fixation of the amount (Stipulation, par. 19) that the provisions of article 844 of the Regulations above quoted have entered into the computation of the stipulated figure of plaintiff's recovery, namely, $163,432.32 with interest as provided by law.

A word should be said concerning the case of Southwestern Oil & Gas Co. v. U. S. (D. C.) 29 F.(2d) 404, because both parties to this controversy rely upon it. That case does not purport to decide the issue here raised, for, as the court says at page 408: "In the present action plaintiff seeks to recover an overpayment which appears as such not by reason of a decrease, but by an increase, in plaintiff's invested capital."

In the belief that this plaintiff has shown that the Commissioner has decreased its invested capital due to its failure to take adequate deductions during the years 1913 to 1918, inclusive, with the result that it has overpaid income and profits taxes in those years, and that it is therefore entitled to the complete relief which the statute intended, judgment will be ordered for the plaintiff in the amount recited in the Stipulation, namely, $163,432.32, with interest as provided by law.

Settle judgment on five days' notice.