## A. SCHRADER'S SON, Inc., v. UNITED STATES.

### No. 403.

Circuit Court of Appeals, Second Circuit.

Argued May 15, 1931.

Decided July 7, 1931.

MANTON, Circuit Judge, dissenting.

Howard W. Ameli, U. S. Atty., and Albert D. Smith, Asst. U. S. Atty., both of Brooklyn, N. Y. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Ottamar Hamele, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

Phillips & Avery, of New York City (John B. Sullivan, Jr., of Boston, Mass., and C. Royall Frazer, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff, a New York corporation, was the owner of a number of patents, some acquired before March 1, 1913, which alone are involved here. In its tax returns for 1913 to 1919 inclusive it did not deduct anything from its gross income for the depreciation of these, but on March 13, 1925, recognizing its error, it filed a claim for a refund upon its tax for 1919. The Commissioner recalculated the whole tax for that year, income, war and excess profits, and made a refund. In so doing he found both the original cost of the patents and their value on March 1, 1913, and in assessing the income tax deducted from the gross income an amount calculated as the depreciation for the year 1919, based upon value. In assessing the war and excess profits tax, he was obliged to fix the invested capital, in which he included the cost of the patents, deducting, however, a total depreciation from that cost, by aggregating the depreciations, also based on cost, for each of the preceding years. This resulted in increasing the plaintiff's war and excess profits tax for 1919. But by virtue of section 284 (c) of the Revenue Act of 1926 (26 USCA § 1065 (c)[1] (of which section 252 of the Revenue Act of 1921 [42 Stat. 268] and section 281 (c) of the Revenue Act of 1924 [26 USCA § 1065 note] were the precursors), he was also obliged to make a refund upon the plaintiff's taxes in the earlier years for that depreciation by which he had reduced its invested capital. This he did, recomputing the income tax for each of the years, 1913 to 1918 inclusive, by deducting from gross income the same yearly depreciation upon the patents, which went into the aggregate he had used in determining the invested capital for 1919. That is to say, he allowed a yearly deduction based upon their cost. Similarly for the years 1917 and 1918 he recomputed the invested capital by using the cost of the patents, as he had done for the year 1919. As a result the plaintiff has received a refund of its income tax for the year 1919, on the depreciation, occurring in that year, of the patents, based upon their value on March 1, 1913; but for the preceding years upon their cost. Its position is

[1] Sec. 284(c). If the invested capital of a taxpayer is decreased by the commissioner, and such decrease is due to the fact that the taxpayer failed to take adequate deductions in previous years, with the result that there has been an overpayment of income, war-profits, or excess-profits taxes in any previous year or years, then the amount of such overpayment shall be credited or refunded, without the filing of a claim therefor, notwithstanding the period of limitation provided for in subdivision (b) or (g) has expired.

that it was entitled to deductions in those years, based upon the value of the patents on March 1, 1913; that is, to a consistent application of the rule which the Commissioner recognized for 1919, and which, we may assume, the law required. The judge took this view of the statute, and gave judgment for the plaintiff.

The section in question does no more than lift the bar of the statute of limitations; how far it does so must be determined by its language and its obvious purpose. It provided against a situation in which the taxpayer might find himself concluded by the lapse of time from taking those very deductions from his gross income, which the Treasury was using against him in a later year. This could arise only because in fixing the war and excess profits tax, the statute used the taxpayer's invested capital, which in turn could not be determined without going back into earlier years, and ascertaining what in those years should have been subtracted from income. The Commissioner might decrease the invested capital for 1919, by charging to income in the year 1918 a sum which the taxpayer had credited to capital in that year, and the taxpayer have no means of using that deduction in his favor. If so, he was at once obliged to pay a larger war and excess profits tax for 1919, because of a smaller invested capital; and he was held to the larger taxes which he had erroneously paid in 1918, because he could not use the same deduction against his gross income in that year. The Treasury in this indirect way could reopen past years and charge him because of his omissions, while he had no corresponding privilege because the statute had run against him. Against that injustice and that alone, Congress meant to relieve him.

The limit of his privilege is entirely clear. It is confined to those deductions which the Commissioner in fact uses to decrease his invested capital and thus raise his war and excess profits tax in the later year. Once he has got the benefit in his earlier taxes of those same deductions, he has not suffered from the action of the Treasury; as to all else he stands charged with his laches, like any other taxpayer. In the case at bar the plaintiff has received a refund for the earlier years, measured by precisely those deductions which the Commissioner took against it in 1919. Its claim to more, if the language of the sections compels its recognition, will result in an unfair discrimination in its favor against other taxpayers who may have made similar mistakes, but whose invested capital has not been reassessed. As to them the statute has bar-

red any reconsideration; section 284 (c) gives them no relief, nor should it give any to those whose invested capital has been corrected, except in so far as consistency requires. While the situation was somewhat different in Southwestern Oil & Gas Co. v. U. S. (D. C.) 29 F.(2d) 404, affirmed 34 F. (2d) 446 (C. C. A. 3), much of the ratio decidendi was the same, as the discussion discloses.

The argument based upon the language of the section leads to no different result. It is true that the decrease in invested capital is presupposed to arise from the taxpayer's failure to take "adequate deductions," and "adequate" must mean such as the law required. The Commissioner in fixing what he deemed adequate must tax all that the law demanded. To be sure, it does not inevitably follow that what may be adequate in fixing invested capital is adequate for other purposes; but, be that as it may, whatever he does take in order to fix the invested capital of the later year is determined for that purpose between the parties, unless it is reviewed. Right or wrong it becomes adequate for invested capital in that year; indeed in the case at bar there is no effort to challenge the tax for 1919. But the overpayment as to which the bar is lifted is the result of taking those deductions which are in this sense "adequate"; nothing more is intended. Thus the adequacy of the deductions cannot be challenged except by challenging the propriety of the reassessment of the invested capital; that once settled, the overpayments are automatically fixed; they are the deductions actually taken, "adequate" because unimpeached.

The second argument is that to take deductions from invested capital in a later year cannot "result" in an overpayment in earlier years. Results must follow causes, not precede them. Surely this is the extremity of verbalism. It is of course true that "taking" the deductions does not create the overpayment; but it is equally true that they demonstrate that there has been an overpayment; and the meaning is apparent, whether or not the diction is perfect. The section ties the overpayments as to which the bar is lifted to the deductions themselves; the decrease in capital depends upon the deductions, and these in turn make the overpayments. The sequence is logical, not causal. Besides, the statute does not in any case impose a tax, but is akin to an exemption; it grants a privilege to certain classes of taxpayers. We are not therefore charged with the duty of finding its warrant straitly within its four cor-

ners; intendments are to be taken in favor of the Treasury.

We hold that the section merely requires the Commissioner in reassessing the taxes in the earlier years, to allow as overpayments the same figures which he takes as deductions for those years in fixing invested capital. If further deductions are sought, they are subject to the statutes of limitation properly applicable; as to them the taxpayer can have no recourse to section 284 (c). Hence it becomes unnecessary to decide what was the proper basis at which to take deductions from gross income in the earlier years. Even though the plaintiff may have suffered by this, it is no more than any other taxpayer must endure, who, having made a mistake, does not discover it and seek redress within the prescribed periods.

Judgment reversed; cause remanded with instructions to dismiss the petition.

MANTON, Circuit Judge, dissents with memorandum.

MANTON, Circuit Judge.

I dissent. The reasons therefor are well expressed in Judge Byers' opinion below. 43 F.(2d) 619. I think the decree should be affirmed upon his opinion.