### SIGNAL GASOLINE CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

#### No. 7568.

Circuit Court of Appeals, Ninth Circuit.
May 20, 1935.

Melvin D. Wilson, of Los Angeles, Cal. (Miller & Chevalier, of Washington, D. C., of counsel), for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Norman D. Keller, Frederick W. Dewart, and Francis A. Le Sourd, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

WILBUR, Circuit Judge.

This is the second appeal from the Board of Tax Appeals in the matter of the income tax for the years 1925 and 1926 of the Signal Gasoline Corporation. We refer to our former decision in 66 F.(2d) 886 for a statement of the facts. It was held in that decision that the relation of the Signal Gasoline Corporation to the oil deposits in the land from which they secured the wet gas for their refining or manufacturing plant was such that they were entitled to a deduction for the depletion of the natural resource contained in the land. The matter was sent back to the Board of Tax Appeals for further consideration. Section 204 (c) (2) of the Revenue Act of 1926 (26 USCA § 935 (c) (2) provides: "In the case of oil and gas wells the allowance for depletion shall be $27\frac{1}{2}$ per centum of the gross income from the property during the taxable year. Such allowance shall not exceed 50 per centum of the net income of the taxpayer (computed without allowance for depletion) from the property, except that in no case shall the depletion allowance be less than it would be if computed without reference to this paragraph."

Upon the new hearing before the Board of Tax Appeals, no new evidence was introduced, and while recognizing the force and validity of our previous decision the Board held that the taxpayer had failed to show that it had any gross income from the wells upon which the item of depletion could be based. Consequently, no deduction for depletion was allowed.

Since the taxpayer is seeking a deduction for depletion from its otherwise taxable income, the burden of proof is upon it not only to prove that it is entitled to the deduction, but also to prove the correct amount thereof. Helvering v. Taylor, 293 U. S. 507, 514, 55 S. Ct. 287, 79 L. Ed. —; Burnet v. Houston, 283 U. S. 223, 51 S. Ct. 413, 75 L. Ed. 991; Reinecke v. Spalding, 280 U. S. 227, 233, 50 S. Ct. 96, 74 L. Ed. 385. That petitioner was entitled to a deduction for depletion was established by our former decision, but the taxpayer on the new hearing still had the burden of showing the Commissioner's determination to be erroneous. The Board of Tax Appeals held that since the petitioner failed to sustain its burden of proof on this issue the deficiency determination of the Commissioner should be sustained. Thus the question for our determination is whether or not the petitioner had sustained the burden of proof which was upon it.

Petitioner contends that it derived a gross income from the property in the amount of the proceeds from the sale of casing-head gasoline and dry gas less the amounts paid as royalties. If the separation of casing-head or wet gas into casing-head gasoline and dry gas is not incidental to production, then it is petitioner's contention that its gross income from the property is the proceeds from the sale of the casing-head gasoline and dry gas less the cost of the separation less the amounts paid as royalties. There was evidence before the Board of Tax Appeals tending to prove the gross income to petitioner under these alternative methods of computation.

Since the submission of this case, we rendered a decision dealing with a similar contention. In Brea Canon Oil Co. v. Com'r, 77 F.(2d) 67, filed April 22, 1935, the question involved was whether or not the depletion allowance must be based on the value of the wet gas at the mouth of the well, or should be allowed upon the proceeds from the sale of the casing-head gasoline and dry gas derived therefrom by means of a manufacturing or refining plant owned by the same taxpayer who

owned the oil wells from which the petroleum and wet gas were produced. In that case we sustained the ruling of the Board of Tax Appeals holding that the process of separating the casing-head gasoline from the dry gas was a manufacturing process, and that the depletion allowance should be determined with reference to the value of the natural product, that is, the wet gas at the mouth of the well, rather than from the proceeds derived from the sale of the gasoline and gas.

In view of the fact that under the existing law the depletion allowance is fixed at an arbitrary figure of 27.5 per cent., the importance of selecting the right base on which this allowance is to be made is of the utmost significance. The theory upon which a fixed percentage is allowed for depletion is that the mineral product to be mined or produced when still in the ground has a value of 27.5 per cent. of its value when mined or produced. Consequently, the 27.5 per cent. represents a return of capital while the balance represents income to the taxpayer subject to the usual deductions in determining the net income. The difficulty in the case at bar arises from the fact that the wet gas produced and processed by the petitioner and by Holly Oil Company under a contract with petitioner was subject to the payment by petitioner of royalties to the owner of the wells for the product at the time it was produced and manufactured into dry gas and gasoline. It is apparent that if the petitioner's contract was such that it was required to pay the full market value of the wet gas as it was produced by the wells it had no capital investment in the well or in the oil content of the land, and had no advantage over a manufacturer who bought his wet gas on the market other than the exclusive right to the product of the particular wells from which it derived the gas. In such a case, where the manufacturer pays to the owner or lessee of the oil land the full market value of the wet gas at the time it is turned over to the manufacturer at the mouth of the well, the entire capital investment in the wet gas belongs to the owner of the land, or lessee, and by reason of the production of the wet gas from the land his capital was depleted by an amount which Congress had arbitrarily fixed at 27.5 per cent. of the value of the wet gas at the surface. The person who paid the market price to the lessee or owner would suffer no diminution of capital investment in the oil or gas in place under such circumstances. If we assume, however, that the petitioner by reason of his favorable contract with the producer secures the wet gas when produced at a fraction of its market price at the time it is produced, say one-half for the purpose of illustration, it is clear that petitioner to that extent (50 per cent.) would have his interest in the wet gas in place in the land reduced by one-half of the amount produced. In such a case it is clear that the allowance for depletion should be equally divided between the owner or lessee and the petitioner. If the relationship between the owner or lessee and the petitioner involves a payment of less than 100 per cent. of the market value of the wet gas at the surface, then by as much as the petitioner owns a fractional portion of the market value of the wet gas when produced, its capital investment is depleted by 27.5 per cent. of that amount. For illustration, if the amount agreed to be paid is 2 per cent. less than the market price of wet gas, the petitioner would be entitled to a depletion allowance of 27.5 per cent. of 2 per cent., that is, .55 per cent. of the market value of the wet gas at the surface before the manufacturing process or separation has taken place.

Neither of petitioner's alternative methods of computing gross income from the wells for purposes of determining depletion allowance is tenable under our decision in Brea Canon Oil Co. v. Com'r, supra, in which decision we held, as stated above, that the depletion allowance should be determined with reference to the value of the natural product at the mouth of the well. Petitioner introduced no evidence from which its gross income from the wells, if any, could be determined upon this basis. The only direct evidence in the record bearing upon the value of the wet gas at the mouth of the well is that introduced by respondent to the effect that such value was 35 per cent. or 36 per cent. of the gasoline income plus whatever amount was obtained from the sale of the dry gas. Basing its contention upon this evidence, respondent claims that petitioner had no gross income from the oil and gas properties because the royalty payments provided for in petitioner's contracts amounted to as much or more than the value of the wet gas thus computed.

In view of this state of the record, it is clear that the decision of the Board of

Tax Appeals must be affirmed for lack of evidence to support petitioner's claim, unless as the petitioner claims the case should be remanded to the Board of Tax Appeals to allow another opportunity for the presentation of additional evidence. This case has been twice heard by the Board of Tax Appeals and petitioner is not entitled to a third opportunity to prove facts sufficient to sustain its burden of proof.

Affirmed.