### CLEVELAND AUTOMOBILE CO. v. UNITED STATES.

No. 6336.

Circuit Court of Appeals, Sixth Circuit.
March 6, 1934.

Rehearing Denied April 13, 1934.

Isador Grossman, of Cleveland, Ohio (M. E. Newcomer, Ralph A. Colbert, and Holliday, Grossman & McAfee, all of Cleveland, Ohio, on the brief), for appellant.

Eldon O. Hanson, of Washington, D. C. (Wilfred J. Mahon and John B. Osmun, both of Cleveland, Ohio, and C. M. Charest and Herbert E. Carnes, both of Washington, D. C., on the brief), for the United States.

Before MOORMAN, HICKENLOOPER, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

This appeal presents two questions, (1) whether, where the Commissioner of Internal Revenue has granted a special assessment of income and profit taxes pursuant to sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093), a court may in an action for a refund review the Commissioner's determination of the taxpayer's net income, and (2) whether, if such power of review exists, the Commissioner properly valued the taxpayer's inventory under the applicable statutes and regulations.

The taxpayer was a corporation (now dissolved) engaged in the manufacture of automobiles at Cleveland, Ohio. In its tax return for 1920 it elected to value its inventory on the basis of the lower of cost or market. Since the only definition given in the regulation furnished the taxpayer for the term "market" was reproduction or replacement cost, and since market as thus defined was lower than cost, the great bulk of its inventory was valued at market. In March, 1922, Treasury Decisions 3295 and 3296, amending articles 1582, 1583, and 1584, of Treasury Regulation 45, were promulgated and made retroactive to 1920. These regulations defined "market" as meaning replacement or reproduction cost "under normal circumstances and for normal goods." At the same time a new provision, also retroactive to 1920, was inserted in article 1582, relating to finished goods unsalable at normal prices, or unsalable in the normal way, which provision is, so far as applicable, printed in the margin.[1]

When these amendments came to the taxpayer's attention, it concluded it had placed too high a valuation upon its inventory as of the close of 1920 by valuing it at reproduction cost; that its inventory did not consist of normal goods, and should be revalued as unsalable at normal prices, or unusable in the normal way; and since the amended regulations were made retroactive to 1920, it filed its claim for refund in the sum of $515,000, based upon an alleged overvaluation of its inventory. The refund being refused, the taxpayer urged consideration of its application previously filed for special relief under sections 327 and 328 of the Revenue Act of 1918. Before granting such relief, the Commissioner requested the taxpayer's acquiescence in his determination of its net income. The taxpayer acquiesced conditionally, reserving the right to question the Commissioner's income determination both if the special assessment were not granted and if the tax found by the Commissioner on the basis of a granted assessment would not afford it sufficient relief. Notwithstanding these conditions, the Commissioner allowed the application for special assessment and computed its tax liability, reducing it by allowing claims for abatement not here in issue, but rejecting over the taxpayer's protest its claim for abatement based upon the overvalued inventory. The taxpayer protested the determination, filed an application to reopen, and ultimately filed this suit in the District Court under title 28, USCA § 41 (20) (The Tucker Act).

The case was tried below upon an agreed stipulation of facts, and upon oral testimony taken before a referee. Findings of fact were made by the court, conclusions of law announced, and a written opinion filed.[2] Findings proposed by the taxpayer were

---

[1] "Any goods in an inventory which are unsalable at normal prices or unusable in the normal way because of damage, imperfections, shop wear, changes of style, odd or broken lots, or other similar causes, including second-hand goods taken in exchange, should be valued at bona fide selling prices less cost of selling * * * or if such goods consist of raw materials or partly finished goods held for use or consumption, they should be valued upon a reasonable basis, taking into consideration the usability and the condition of the goods, but in no case shall such value be less than the scrap value. Bona fide selling price means actual offerings of goods during a period ending not later than 30 days after inventory date."

[2] Not for publication.

overruled, and a judgment entered for the government, from which this appeal was taken.

We are met first by the government's contention that the special assessment made by the Commissioner under sections 327 and 328 is discretionary and administrative, and in the absence of fraud or other irregularities is not subject to review by the court. Section 327 of the 1918 Act provides in subdivision (d) that the tax shall be determined in accordance with section 328, "where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328." Section 328 provides in effect that in cases covered thereby the tax shall be computed without reference to the value of the invested capital, and shall be determined by the ratio which the average tax of representative corporations engaged in a like or similar trade or business bears to their average net income.

In Williamsport Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985, the Supreme Court concluded that the determination whether the taxpayer is entitled to the special assessment was confided by Congress to the Commissioner, and could not under the Revenue Act of 1918 be challenged in the courts—at least in the absence of fraud and other irregularities. This was on the ground that the nature of the task confided, the methods of procedure prescribed, and the language employed to express the conditions under which special assessment is required, all negative the right to a review of his determination by a court, and on the further ground that the considerations which demand special assessment and those which govern its computation in all cases, are facts concerning the situation of a large group of taxpayers, and can only be known to an official or body having wide experience in such matters and ready access to the means of information.

In United States v. Henry Prentiss & Co., 238 U. S. 73, 53 S. Ct. 283, 285, 77 L. Ed. 626, the exceptional and discretionary character of the relief afforded by sections 327 and 328 is expounded, and the distinction between the basis on which it is sought and granted and the basis on which claims for refund are pursued under the statute (section 301 [40 Stat. 1088]) is clearly pointed out. In the language of Mr. Justice Cardozo: "The grievance that will support an application for a special method of assessment under subdivision (d) of section 327 assumes adherence to the statute, and counts upon extraordinary conditions as justifying a claim that the statute is oppressive. * * * Upon a claim of deviation from the statute, the taxable balance for the year will be subject to reaudit as if the tax were laid anew. The grievances differ so essentially that the assertion of the one must be felt to be unrelated to any complaint as to the other." It was therefore held that an application for discretionary jurisdiction could not be amended after the running of the statute of limitations into a claim for refund based upon errors of law or fact, for a claim for special assessment is distinct from one for a revision of values. "Retraction, *if ever possible* (italics ours), must be held to be too late when the statute of limitations has interposed a bar."

There followed the case of Heiner v. Diamond Alkali Co., 288 U. S. 502, 53 S. Ct. 413, 415, 77 L. Ed. 921, in which it was held that both in respect to the granting of a special assessment and to the ascertainment of the rate or ratio of tax to be applied to net income, the exercise of discretion is committed to the Commissioner, and his discretion may not be reviewed by the courts. Moreover, the courts cannot say whether if the income of the taxpayer had been substantially less than the figure he used, the Commissioner would have granted special assessment, or granting it, would have compared the taxpayer's business with the operating results of the identical corporations selected for comparison, or have applied the same or a different ratio to compute the tax liability.

It will be noted that no amendment to a claim for refund, or statute of limitations is here involved, and that in the cases cited the Supreme Court has gone no further than the issues required in defining the scope of administrative discretion vested in the Commissioner by the special relief sections of the statute. But broader issues are here presented. Having granted the taxpayer's application for extraordinary relief, and having determined the proper comparative rate to be applied, based upon at least a qualified if not conclusive acquiescence in his deter-

mination of net income, is the Commissioner's administrative discretion now ended, and are questions of value which were justiciable before special assessment still within the jurisdiction of a court?

It seems to us that the logic of the Williamsport, Prentiss, and Diamond Alkali Cases leads inevitably to the conclusion that once the special discretionary power to grant relief under sections 327 and 328 is invoked and exercised, and no claim of fraud or other irregularity is asserted, neither the determination, nor the factors used in computation, nor the result itself, is open to review. It would seem to be a contradiction in terms to say that a determination to grant or deny extraordinary relief, notwithstanding the normal operation of the statute, is not open to judicial review, and yet to say that the extent of the relief granted may be reviewed. It is to say that the whole is greater than the sum of its parts, and the greater does not include the lesser. Moreover, to hold the special assessment reviewable on questions of value and income would tend to defeat the very purpose for which sections 327 and 328 were enacted. If considerations affecting net income are to remain open to review, the very basis upon which alone special assessment can be granted and made becomes a shifting one, and the assessment an idle gesture, binding the government possibly, but never the taxpayer. The latter may with impunity speculate upon the result, and gaining nothing, lose nothing. The doubt in the mind of Mr. Justice Cardozo that such result would follow an application for special relief is expressed in the Prentiss Case by the reservation already quoted, "Retraction, if ever possible," etc.

Finally, the practical effect of the decision in the Diamond Alkali Case demonstrates that in the absence of fraud or other irregularity, the special assessment made by the Commissioner cannot be judicially reviewed, however the problem may be stated or upon what reasoning its solution may be sought. In that case both the District Court [39 F.(2d) 645] and the Circuit Court of Appeals [60 F.(2d) 505] found errors in values as determined by the Commissioner, reduced the taxpayer's net income as determined, and recomputed the taxes by applying the rate per cent. used by the Commissioner. The District Court gave judgment, and the Circuit Court of Appeals directed its modification. The Supreme Court reversed on the grounds already stated. The opinion does not specifically state that the courts have no power to review the Commissioner's determination of net income, though such holding would seem to be implicit in the statements that "it is beyond the power of a court to usurp the Commissioner's function of finding that special assessment should be accorded, and equally so to substitute its discretion for his as to the factors to be used in computing the tax," and that section 328 "precludes judicial revision or alteration of the computation of the tax." But if we are wrong in this, the result is the same. If the courts cannot review the Commissioner's determination of a rate or ratio, nor apply a rate used by the Commissioner in computing taxes upon one income base to a base substantially different, the result must be, in the absence of fraud or other irregularities, a denial of judicial review—whatever the rationalization may be—always remembering that the instant suit is not an appeal from a judicial or quasi judicial tribunal, but as was the Diamond Alkali proceeding, an original suit at law for the recovery of an overpayment.

We are not greatly impressed with the argument that the government's view of the special assessment provisions penalizes the taxpayer who resorts to them and compels him to gamble away a right to judicial review specially given him by statute for a blind remedy that may give him much less. The taxpayer is not compelled to invoke the relief sections of the statute. He has his right to judicial relief without resort to them, and whether he seeks such relief or the extraordinary relief which these sections afford, may perhaps depend upon the confidence he has in the merit of his grievance. Moreover, he has still his right of appeal from the findings of the Commissioner to the Board of Tax Appeals (Blair v. Oesterlein Machine Co., 275 U. S. 220, 48 S. Ct. 87, 72 L. Ed. 249), and such appeal being to an independent agency in the executive branch of the government, especially established to review the Commissioner's decisions, is not in conflict with the view that sections 327 and 328 preclude judicial review of the exercise of administrative discretion. Williamsport Co. v. United States, supra.

But even if we have carried our reasoning from the logic and effect of the cases to a conclusion too remote or unsound, the taxpayer in the instant case must still fail. The applicable articles of Treasury Regulation 45 provide an exceptional method of valuing inventories in respect to goods that are abnormal or unsalable at normal prices, or

unusable in the normal way. They define abnormal goods as those which are unsalable or unusable because of damage, imperfections, shop wear, changes of style, odd or broken lots, or other similar causes, including secondhand goods taken in exchange. They provide that such goods shall be valued at bona fide selling prices less cost of selling, and bona fide selling price is defined as meaning actual offering of goods during a period not later than 30 days after inventory date. The burden of the taxpayer's contention is that its automobiles in 1920 were improperly engineered, constructed, and designed; that they were damaged in transit to distributors, and in storage awaiting the honoring of drafts; that market conditions had changed so that they could not be sold at normal prices, and so on. The proofs, however, show that the cars were the ordinary standard product of the taxpayer— that it had no other product—that its list prices were maintained throughout 1920, and that while sales had fallen off, many sales were still made at retail at the regular listed prices. The District Judge found that the taxpayer's inventory was not abnormal in the sense of the regulation.

The burden of overturning the Commissioner's determination was upon the plaintiff in the court below. Reineke v. Spalding, 280 U. S. 227, 50 S. Ct. 96, 74 L. Ed. 385. We cannot say upon this record that the burden was sustained. To demonstrate abnormality there must be some comparison with normal goods so that the fact and the extent of the claimed departure from the norm may be recognized. There is no such comparison here made. The taxpayer's product was claimed to be abnormal in its entirety. In so far as the record suggests a comparison with the products of other manufacturers, it is still silent as to the particular product with which comparison is to be made, and common knowledge at once brings to mind such manifold differences in size, weight, horse-power, design, performance, accessories, and price (to mention but a few of the factors to be considered), that the suggested comparison with normal goods could be of little aid either to the Commissioner or to the court, even if we were to concede that the spirit and the letter of the regulation permit of a determination of abnormality by comparison with products other than those produced by the taxpayer.

But even were we to assume that the taxpayer's inventory was in December, 1920, abnormal, in respect at least to its finished cars, it failed to bring itself within the regulation. It had concededly no bona fide selling prices which after deduction of selling cost were less than the lower of cost or market. It seeks to escape this condition in the regulation by the argument that since there were no such bona fide prices the regulation does not apply, or that by synthetically building up what should have been the bona fide selling price of its cars in 1920 by a consideration of all factors then known and those later discovered it can thus substitute for the actual selling price required by the regulation a supposititious selling price which the Commissioner and the court must accept because it conforms to good accounting practice. We cannot so easily dispose of the regulation.

It was within the power of the Treasury Department to promulgate the regulation involved, and no challenge is made thereto. It was likewise within the administrative authority to provide as a test for goods which departed for the various stated reasons from the taxpayer's normal product, and the extent of such departure, the existence of a bona fide selling price at the date of inventory, or within 30 days thereafter, and to define such selling price as limited to actual offerings of goods. Nor is the test of bona fides unreasonable. We said in the case of Fairless v. Commissioner, 67 F.(2d) 475, decided November 8, 1933, that the provision in the Revenue Acts permitting deduction of worthless debts only when ascertained to be worthless and charged off within the taxable year, meant what it said, was a reasonable requirement, and was conditioned upon some specific act of the taxpayer clearly indicating their abandonment as assets. The reasoning there relied upon is applicable here.

What we have said about the taxpayer's finished product in relation to their abnormality is equally applicable to its inventory stock of parts and raw material. If the finished automobiles were not within the proofs abnormal, the parts and raw material which were usable, and were in fact used, in the building of such cars, were likewise not abnormal. Indeed it may be said that even if the finished cars had been shown to be abnormal goods, such abnormality might not for that reason alone be attributed to the unfinished goods. Certainly errors in assembly need not have been repeated, and damage in transit and storage could not be imputed to inventory items which did not leave the taxpayer's factory, and demand for replacement parts might conceivably be

greater for a poorly designed and assembled car than for one not subject to the claimed imperfections.

No fraud or other irregularity being either alleged or proved, the judgment below is affirmed.[3]

## On Petition for Rehearing.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

### PER CURIAM.

It was perhaps not accurate to say that the taxpayer here had a right of appeal to the Board of Tax Appeals from the Commissioner's findings on special assessment since no deficiency was found. That question was reserved in Blair, Commissioner, v. Oesterlein Machine Co., 275 U. S. 220, 48 S. Ct. 87, 72 L. Ed. 249, and not decided. We find no reason to withdraw the opinion or to in any other respect modify it.

The petition for rehearing is denied.

---

[3] The late Judge Hickenlooper concurred in the result but did not consider the opinion as announced.