## JOSEPH JOSEPH & BROS. CO. v. UNITED STATES.
### No. 6471.

Circuit Court of Appeals, Sixth Circuit.

June 8, 1934.

M. J. Ahern, of Chicago, Ill., and Albert Hubschman, of Washington, D. C. (A. W. Goldsmith, Jr., of Cincinnati, Ohio, on the brief), for appellant.

M. K. Rothschild, of Washington, D. C. (Francis C. Canny, of Cincinnati, Ohio, and E. Barrett Prettyman, Frank J. Ready, Jr., and Charles K. Hoover, all of Washington, D. C., on the brief), for the United States.

Before MOORMAN, HICKS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

Appellant brought suit in the District Court under the Tucker Act (tit. 28, U. S. C. § 41 (20) [28 USCA § 41 (20)]), to recover certain income and excess profits taxes for 1917.

In its amended petition appellant alleged that on March 27, 1918, it filed its income and profits tax return for the calendar year 1917, disclosing therein a tax liability of $1,820,589.01, which it paid to the Collector; that in March, 1920, the Commissioner of Internal Revenue made an additional assessment for 1917 in the sum of $25,261.59; that he abated $23,215.67 of it on July 9, 1921, appellant paying the difference; that it filed an informal refund claim alleging that because the Commissioner could not determine the statutory invested capital its excess profits tax for 1917 should be computed under the provisions of section 210 of the Revenue Act of 1917 (40 Stat. 307), which would result in a tax less than that assessed and collected; that on April 18, 1929, it perfected its informal claim by filing a formal refund claim on Commissioner's Form 843; that in May, 1922, it received notice that the Commissioner, being unable to determine its statutory invested capital for 1917, had determined its excess profits tax liability under the provisions of section 210; that acting under this statute he fixed appellant's net income at $3,373,406.59 and its tax liability at $1,471,836.99, and that he did this on the basis of a comparison with the then tax liability of concerns which he had selected for that purpose under the statute, but that subsequently upon a final determination and audit the taxes of these concerns had been reduced; that the comparison provided in section 210 should have been made with the correct tax liabilities of these concerns and not upon

the basis of tentative, incorrect, excessive, and erroneous figures; that appellant demanded that such correct comparison be made but the Commissioner refused; that appellant also demanded that the Commissioner furnish it the tax data of the concerns selected by him for comparative use, together with the names and addresses of such concerns, to enable it to verify the rate bases used in fixing its tax rate; that appellant further advised the Commissioner that it had carefully canvassed all of the concerns engaged in its line of business having a volume of business comparable to its own and it was prepared to establish the tax rate of such concerns; that the Commissioner rejected appellant's claim for refund and refused to use the correct tax liability of comparative concerns in fixing appellant's and had thus in the abuse of discretion arbitrarily and fraudulently retained an overpayment by appellant in the sum of $318,000 as stated in paragraph XI and in the sum of $400,000 as stated in paragraph XIV.

Appellee filed a demurrer to the petition challenging the court's jurisdiction over the subject-matter on the ground that it had no power to review or alter the acts of the Commissioner in granting or denying special assessments under the provisions of section 210. The court sustained the demurrer. Hence this appeal.

We think the order of the District Judge was right.

The rate of excess profits tax as provided by section 201 of the Revenue Act of 1917 (40 Stat. 303) depends upon the ratio of net income to invested capital. "Invested capital" is defined by section 207 of the Act. Congress foresaw that it would not always be possible under section 201 satisfactorily to determine invested capital or to compute the tax. It therefore, by section 210, supplied a special method of assessment and computation to be adopted in such contingency, providing that the deduction allowed in such cases should be that percentage of the taxpayer's income arrived at by comparing the average deduction of representative concerns engaged in a like or similar trade or business with the average net income of said concerns. This duty was delegated to the Commissioner to be performed in accordance with Treasury Regulations.

On February 24, 1919, the Revenue Act of 1918 with its sections 327 and 328 was enacted (40 Stat. 1093).

As stated in Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 558, 48 S.

Ct. 587, 588, 72 L. Ed. 985, these sections "were intended to broaden the powers of relief first conferred by section 210 of the War Revenue Act of 1917. * * *" They, like section 210, provided a special method of assessment when the Commissioner was unable to determine invested capital. Section 328 provided that in such case "the tax shall be the amount which bears the same ratio to the net income of the taxpayer (in excess of the specific exemption of $3,000) for the taxable year, as the average tax of representative corporations engaged in a like or similar trade or business, bears to their average net income (in excess of the specific exemption of $3,000) for such year."

Section 328 further provided:

"In computing the tax under this section the Commissioner shall compare the taxpayer only with representative corporations whose invested capital can be satisfactorily determined under section 326 and which are, as nearly as may be, similarly circumstanced with respect to gross income, net income, profits per unit of business transacted and capital employed, the amount and rate of war profits or excess profits, and all other relevant facts and circumstances.

"(b) For the purposes of subdivision (a) the ratios between the average tax and the average net income of representative corporations shall be determined by the Commissioner in accordance with regulations prescribed by him with the approval of the Secretary."

Appellant admits that under section 210 it was within the discretion of the Commissioner to determine whether it was entitled to special assessment and, if so, to select as comparatives representative concerns engaged in a like or similar trade or business. See (1) the striking similarity of the two sections touching the authority of the Commissioner; and (2) the decisions in Williamsport Wire Rope Co. v. U. S., 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985, United States v. Henry Prentiss & Co., 288 U. S. 73, 53 S. Ct. 283, 77 L. Ed. 626, and Heiner v. Diamond Alkali Co., 288 U. S. 502, 53 S. Ct. 413, 77 L. Ed. 921. But appellant's specific contention is that after having made such determination and selected the comparatives, the exercise of discretion by the Commissioner under section 210 was at an end, and that it was incumbent upon him in his computation of appellant's taxes to accept the final tax data of the concerns selected by him as representative.

In Cleveland Automobile Co. v. United

States of America, 70 F.(2d) 365, 368, decided March 6, 1934, this court, after reviewing the Williamsport, Prentiss, and Diamond Alkali Cases, said:

"It seems to us that the logic of the Williamsport, Prentiss, and Diamond Alkali Cases leads inevitably to the conclusion that once the special discretionary power to grant relief under sections 327 and 328 is invoked and exercised, and no claim of fraud or other irregularity is asserted, neither the determination, nor the factors used in computation, nor the result itself, is open to review. It would seem to be a contradiction in terms to say that a determination to grant or deny extraordinary relief, notwithstanding the normal operation of the statute, is not open to judicial review, and yet to say that the extent of the relief granted may be reviewed. It is to say that the whole is greater than the sum of its parts, and the greater does not include the lesser. Moreover, to hold the special assessment reviewable on questions of value and income would tend to defeat the very purpose for which sections 327 and 328 were enacted. If considerations affecting net income are to remain open to review, the very basis upon which alone special assessment can be granted and made becomes a shifting one, and the assessment an idle gesture, binding the government, possibly, but never the taxpayer. * * *

"Finally, the practical effect of the decision in the Diamond Alkali Case demonstrates that in the absence of fraud or other irregularity, the special assessment made by the Commissioner cannot be judicially reviewed, however the problem may be stated or upon what reasoning its solution may be sought. In that case both the District Court [39 F.(2d) 645] and the Circuit Court of Appeals [60 F.(2d) 505] found errors in values as determined by the Commissioner, reduced the taxpayer's net income as determined, and recomputed the taxes by applying the rate per cent. used by the Commissioner. The District Court gave judgment, and the Circuit Court of Appeals directed its modification. The Supreme Court [287 U. S. 593, 53 S. Ct. 221, 77 L. Ed. 517] reversed on the grounds already stated. The opinion does not specifically state that the courts have no power to review the Commissioner's determination of net income, though such holding would seem to be implicit in the statements that 'It is beyond the power of a court to usurp the Commissioner's function of finding that special assessment should be accorded, and equally so to substitute its discretion for his as to the factors to be used

in computing the tax,' and that section 328 'precludes judicial revision or alteration of the computation of the tax.' "

See, also, Brown's "Shamrock" Linens, Ltd., v. Bowers, 48 F.(2d) 103 (C. C. A. 2), and Ennis Coal Co. v. U. S., 37 F.(2d) 574 (C. C. A. 4).

We have quoted from the Cleveland Case because section 210 and sections 327 and 328 are so similar in purpose and in the procedure provided as to compel the conclusion that the District Court has no more authority to review the action of the Commissioner under one section than under the other. A suit in the District Court under the Tucker Act (24 Stat. 505) contemplates a money judgment. To say that such a judgment may be awarded appellant upon the ground that the Commissioner, proceeding under section 210, wrongfully overassessed the taxes against it through the use of incorrect data, is to substitute the court for the Commissioner. We have been cited to no statute clothing the District Court with such jurisdiction. It is not a tax assessor. See Central Iron & Steel Co. v. U. S., 6 F. Supp. 115 (Court of Claims); McDonnell v. U. S., 59 F.(2d) 290 (Court of Claims).

In the last paragraph of appellant's amended petition it is averred that:

"In the said rejection of the plaintiff's claim and in the refusal to use the correct tax liability of the comparative concerns and in the use of the erroneous figures which were not in fact the tax rates of the concerns determined to be the proper comparatives under the statute the Commissioner has acted unlawfully and arbitrarily and in such abuse of discretion as to *fraudulently* retain as a tax for 1917 an amount clearly in excess of the tax for 1917 imposed by the Revenue Act." (Italics ours.)

This allegation was obviously made to bring appellant, if possible, within the protection of the last clause of the following sentence in Williamsport Wire Rope Co. v. U. S., supra, to wit:

"We conclude that the determination whether the taxpayer is entitled to the special assessment was confided by Congress to the Commissioner, and could not, under the Revenue Act of 1918, be challenged in the courts —*at least in the absence of fraud or other irregularities.*" (Italics ours.)

But assuming that the allegation of fraud is sufficient as a pleading, we do not understand that the expression "in the absence of fraud or other irregularities" was intended to, or has, the effect of clothing a District

Court, proceeding under the Tucker Act (24 Stat. 505), with the power to set aside a special assessment for "fraud or other irregularities" or to reduce the assessment and give judgment for the overpayment or to remand the case to the Commissioner for a new assessment, where the only grievance is the manner in which the special assessment was made, and no relief is sought in respect to the assessment made under the statute.

The judgment of the District Court is affirmed.