## S. W. FLOWER CO. v. DENMAN.

### No. 3846.

District Court, N. D. Ohio.

March 27, 1936.

Fraser, Effler, Shumaker & Winn, of Toledo, Ohio, for plaintiff.

Lester L. Gibson, Sp. Asst. to Atty. Gen., Emerich B. Freed, U. S. Atty., of Cleveland, Ohio, and G. P. Openlander, Asst. U. S. Atty., of Toledo, Ohio, for defendant.

HAHN, District Judge.

This is an action for the recovery of income tax claimed to have been unlawfully assessed and collected by the defendant. Recovery is sought for the fiscal years ending April 30, 1919, and April 30, 1920, in the amount of $25,480.48. The sole reason advanced for such recovery in the evidence is that the commissioner unlawfully reduced the salaries voted to the officers of the plaintiff company by its directors for said years.

The view I am compelled to take of the case makes it necessary to consider only one of the defenses of the government. It is urged that the court had no jurisdiction herein because the plaintiff for the years mentioned requested and received special consideration by the Commissioner of Internal Revenue under the Revenue Act of 1918, §§ 327 and 328, 40 Stat. 1057, 1093. The same contention was made prior to a trial upon the merits, but at that time I overruled the government's contention without prejudice, because the very able brief of plaintiff's counsel left me in great doubt as to the validity of the government's position.

A careful examination of the exhibits bearing upon this question has led me to the conclusion that the authorities hereinafter cited, especially those of our own Circuit Court of Appeals, are binding upon me and require me to dismiss the plaintiff's action.[1] I will not analyze the authorities which I think require me to dismiss the petition ex-

---

[1] The exhibits which may bear upon the question, in their chronological order, are as follows: Exhibit 17, Exhibit 18, Exhibit C, Exhibit I, Exhibit D, Exhibit E, Exhibit 1, Exhibit F, Exhibit G, Exhibit H, Exhibits 2–12, inclusive, Exhibit 19, Exhibit 13, Exhibit J, and Exhibits 14–16, inclusive.

cept in a few brief references hereinafter to be made. The cases dealing with the question are as follows:

Under Revenue Act of 1917, § 210, 40 Stat. 307—United States v. Factors & Finance Corp., 288 U.S. 89, 94, 95, 53 S.Ct. 287, 77 L.Ed. 633; Joseph Joseph & Bros. Co. v. United States, 71 F.(2d) 389 (C.C.A.6).

Under Revenue Act of 1918, §§ 327, 328 —United States v. Henry Prentiss & Co., 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626; Heiner v. Diamond Alkali Co., 288 U.S. 502, 53 S.Ct. 413, 77 L.Ed. 921; Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011; Cleveland Automobile Club v. United States, 70 F. (2d) 365 (C.C.A.6); McKeever v. Eaton (D.C.Conn, Thomas J.) 6 F.Supp. 697; Michigan Iron & Land Co. v. United States (Ct.Cl.) 10 F.Supp. 563, 570, 571.

It may be said at the outset that though there has been no regulation or ruling upon the subject, it has been the practice generally in the Bureau of Internal Revenue to require taxpayers who apply for special assessment under sections 327 and 328 first to acquiesce in the computation of the tax as made without special assessment upon the ordinary statutory basis, and such a determination is perhaps necessarily a condition precedent to a correct computation of the tax under the special assessment provisions.

Considering a few of the exhibits which seem to have a direct bearing upon the proposition under consideration, Exhibit D is a thirty-day letter dated July 2, 1925. Exhibit E, dated July 29, 1925, is a letter of protest by the taxpayer, as follows:

"We protest the assessment of $17,904.-28 for the fiscal year ended April 30, 1919, and $85,611.26 for the fiscal year ended April 30, 1920, for the reason it is believed that there are such abnormalities in the invested capital as would warrant the assessment of the excess profits taxes under the provisions of sections 327 and 328 of the Revenue Act of 1918, and it is therefore requested that the case be forwarded to the Special Assessment Section and we be given ten days additional time in which to file a formal protest setting forth in detail the abnormalities referred to above."

Exhibit 1 is a certified copy of a letter of protest dated March 2, 1926. The letter opens:

"In order that there shall be a final determination of the statutory tax liability for the fiscal years ending April 30, 1919, and April 30, 1920, before our request for special assessment is considered," etc.

It is suggested in the letter (1) that the invested capital for the years be recomputed, and (2) that the disallowance of officers' salaries be reconsidered. The closing paragraph of the letter is as follows:

"After the net income and invested capital have been adjusted in accordance with our contentions outlined above. It is requested that the case be returned to the Special Assessment Section for reconsideration."

Exhibit F is a letter from the Commissioner of Internal Revenue to the taxpayer, under date of April 10, 1926. It is as follows:

"An examination of the file of the case discloses that the taxpayer was notified in a letter dated July 2, 1925 (Ex. D above), of the proposed assessment of additional income and profit taxes for the taxable years 1919 and 1920, and in a protest thereto dated August 5, 1925 (this letter is not in evidence), the statement was made:

" '* * * the taxpayer concurs in the final determination of the tax liability as shown in the Department's letter dated July 2, 1925. * * *' "

Relying upon this acquiescence the case was forwarded for consideration under sections 327 and 328 of the Revenue Act of 1918, and proper adjustment was made on the individuals' returns for salaries disallowed in the audit of the corporate returns.

In view of the above action of the Bureau, your request for a reconsideration of the disallowance of officers' salaries must be denied. Proper adjustment, however, will be made for the proration of the adjusted tax liability for the year 1918.

Exhibit G is a conference report, dated May 14, 1926, of the Consolidated Returns Audit Division. It is stated therein that a compromise proposition was tentatively suggested, that the following amounts be allowed:

"For 1919 ...............$38,500.00.
For 1920 ...............$50,000.00."

These figures approximate one per cent. of the gross sales, and are believed to be fair compensation for the services rendered. These figures do not include sal-

aries deductible by the subsidiary, amounting to $3,000 a year.

Exhibit H is a letter of acquiescence, dated May 19, 1926. It is signed by the secretary of the taxpayer and is as follows:

"Referring to the recent conference which was held by our representative with the Consolidated Audit Section of the Income Tax Unit relating to the disallowance of a portion of the officers' salaries of the above-named taxpayer and its affiliated corporation, The Indiana Seed Company, for the fiscal years ended April 30, 1919, and April 30, 1920, you are advised that we acquiesce in the adjustments of the consolidated officers' salaries for the fiscal year 1919 amounting to $53,000, as a basis for finally closing the case in the Consolidated Audit Section.

"The Corporation further agrees to have executed by its officers waivers covering the years affected by these salary adjustments, so that any additional tax that may be found due from the officers of the corporation may be collected.

"It is our understanding that as soon as the salary adjustments are made in accordance with the above proposal, the case will be forwarded to Special Assessment section for consideration under the relief provisions of the Revenue Act of 1918."

It seems to me that a fair analysis of these exhibits shows an abandonment by the taxpayer of its right to appeal from the statutory allowance, which seems to have been agreed upon between the government and the taxpayer.

This case presents a situation where the broad and comprehensive language of the decisions makes them peculiarly applicable to require a dismissal of the taxpayer's petition regardless of whether special relief was denied or granted to the taxpayer under sections 327 and 328. The fact is that in this case special relief was denied to the taxpayer for the year 1919, but relief was granted for the year 1920.

The reasoning of Judge Simons in Cleveland Automobile Club v. United States (C.C.A.6) 70 F.(2d) 365, at pages 368, 369, is peculiarly applicable.

It should also be noted that in United States v. Factors & Finance Corp., 288 U. S. 89, at page 94, 53 S.Ct. 287, 77 L.Ed. 633, Mr. Justice Cardozo refers to the Prentiss Case as involving an abandonment and an agreement on the part of the taxpayer. That is the situation here, where it is claimed there was a double acquiescence. And, further, in the Prentiss Case, 288 U.S. 73, at page 88, 53 S.Ct. 283, 286, 77 L.Ed. 626, the same justice states: "There is room for argument that the taxpayer, having won the privilege of a hearing on those terms, is estopped from retracting its assent and resuming the abandoned ground"—citing the cases from which excerpts are now to be taken and quoted:

Sturm v. Boker, 150 U.S. 312, 333, 334, 14 S.Ct. 99, 106, 37 L.Ed. 1093: "It is next urged—and the court below seems to have taken the same view of the matter—that the complainant is estopped from denying his responsibility for the loss of the goods because of alleged statements made by him as a witness in the suits upon the insurance policies. It is claimed that in those suits he testified under oath that he was the owner of the goods, and thereby precluded himself from asserting anything to the contrary in this case, under the wise and salutary doctrine which binds a party to his judicial declarations, and forbids him from subsequently contradicting his statements thus made. We do not controvert the soundness of this general rule, as laid down in the cases cited by the defendants."

In Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578, it was said: "It may be laid down as a general proposition that, where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."

The doctrine of estoppel is peculiarly applicable to this case, since the government changed its position to the extent of making refunds to the officers and stockholders of the corporation in the amount of $10,700.80, for which no recovery can now be had.

Plaintiff is a close corporation. All of the stockholders are directors of the company. Exhibit A shows that about October 14, 1925, the government paid by way of refund to the officers of the company, because of reduction of the salaries theretofore allowed to them by the directors, refunds in the amount of $10,700.80. It will be noted that these refunds were paid with-

in four months of the time that a letter of acquiescence had been filed by the taxpayer on August 5, 1925, being the letter referred to and quoted from in Exhibit F above.

Further enlightenment may be gathered from a decision of our own Circuit Court of Appeals, in Spitzer v. Board of Trustees, 267 F. 121, cert. den. 254 U.S. 653, 41 S.Ct. 149, 65 L.Ed. 453. That case, at page 128 of 267 F. note 2, stresses the requirement that the party urging the estoppel must have been prejudiced. That prejudice appears here in that, in justifiable reliance upon the taxpayer's letter of acquiescence, the government made refund to the officers of the company in the amount of $10,700.80, which amount could not now be recovered by the government if the previous reductions in salaries be restored in this action.

It seems to me that the authorities cited require the dismissal of the plaintiff's petition, and it is dismissed, at plaintiff's costs, with exceptions to the plaintiff.