### OBISPO OIL CO. v. WELCH, Collector of Internal Revenue.

### No. 8079.

Circuit Court of Appeals, Ninth Circuit.

Sept. 28, 1936.

See, also, 48 F.(2d) 872.

Joseph D. Peeler, of Los Angeles, Cal. (Miller, Chevalier, Peeler & Wilson, of Los Angeles, Cal., of counsel), for appellant.

Peirson M. Hall, U. S. Atty., Alva C. Baird, Asst. U. S. Atty., and E. H. Mitchell, Sp. Asst. to the U. S. Atty., all of Los Angeles, Cal., and Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, John G. Remey, and L. W. Post, Sp. Assts. to the Atty. Gen., for appellee.

Before WILBUR, GARRECHT, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appeal has been taken by Obispo Oil Company, a corporation, from a judgment entered in its favor for $4,010.24 in an action brought by it against appellee to recover $266,162.43, alleged to have been illegally exacted from appellant on account of additional income and profits taxes for the year 1920. Appellee has also appealed, but will hereinafter be referred to as appellee.

The findings of fact made by the trial court are not in dispute.

Appellant was a successor to a claim of title held under a placer mining location, made in the year 1900, covering 40 acres of land in the Kern River district of California, and prior to the year 1914 was engaged in the development and production of crude petroleum.

The Secretary of the Interior classified the land in question as oil bearing on June 9, 1909. Such land was described in the Taft withdrawal order of September 27, 1909, which purported to temporarily withdraw such land from all forms of "location, settlement, selection, filing, entry or disposal." The Taft order also contained the condition that "all locations or claims existing and valid at this date may proceed to entry in the usual manner after field investigation and examination."

In June, 1910, Congress passed an act (36 Stat. 847, amended, 37 Stat. 497 [43 U. S.C.A. §§ 141—143]) granting express authority to the President to issue withdrawal orders, with the limitation that the rights of bona fide occupants or claimants of oil or gas lands, who at the date of the withdrawal order were in diligent prosecution of work leading to discovery, should not have their right impaired.

At the date of the Taft order, appellant had made exploration for oil but did not discover oil until June, 1910. Thereafter appellant remained in possession of the land, commenced drilling operations, and in December, 1913, completed a well which became a heavy producer of oil. Other wells were thereafter drilled and the output thereby increased.

About March 1, 1914, the United States commenced a suit against appellant and others to recover possession of the land and to recover the proceeds of oil theretofore produced (and sold?). About March 11, 1914, the court, in that suit, appointed a receiver to take charge of the property, with direction to impound the proceeds therefrom, pending termination of the litigation. From that time until November, 1920, or shortly thereafter, appellant produced and marketed the oil under the direction of the receiver, making return to the latter of the proceeds thereof.

During the period in question appellant kept its books on an accrual system of accounting, and accounted for the income received from the sales of oil during each of the years 1914 to 1920 as separate and independent years, and on its books charged the receiver with the amounts so referred to. For each of these years appellant made its income tax returns and therein accounted for income and profits as though it were in undisputed ownership and possession.

On December 24, 1919, a decree was entered in the suit mentioned, in favor of the United States, adjudicating that "defendants nor any of them had at any time, or has now any estate, right, title or interest whatsoever, in or to" the land hereinabove mentioned. Appellant thereafter appealed to this court, claiming that it was holding under a valid location which was completed prior to the withdrawal order of September 27, 1909, and was therefore unaffected thereby.

The Leasing Act of February 25, 1920,[1] provided that, upon relinquishment to the United States by a claimant or his successor of his right, title, and interest in oil-bearing land claimed under the pre-existing placer mining law, and on which one or more oil or gas wells had been produced, and upon payment of certain amounts therein specified, the claimant or his successor would be entitled to a lease for a period of twenty years.

On April 30, 1920, while its appeal was still pending before this court, appellant made request to relinquish its interest and obtain a lease, and on that date paid for the benefit of the United States the respective amount of money required by the statute. The request was approved, and on November 29, 1920, this court, in accordance with a stipulation, directed a mandate to the court below ordering a discharge of the decree, ordering the receiver to turn over possession of the land and the impounded funds to appellant. On November 30, 1920, an order was entered in the trial court complying with said mandate, and the

---

[1] 41 Stat. 437, 443 (chapter 85, § 18 [30 U.S.C.A. § 227]).

receiver turned over to appellant all the money and assets theretofore impounded.

The trial court found that the Commissioner had overstated certain items and had understated certain items. By subtracting the total of the latter items from the total of the former items, the court found a net overstatement on which a tax was illegally exacted and gave judgment for the amount of such tax.

The Revenue Act of 1918, c. 18, § 233 (40 Stat. 1057, 1077), provides that, in the case of a corporation subject to tax, the term "gross income" means the gross income as defined in section 213. Section 213 (40 Stat. 1065) provides:

"That for the purposes of this title * * * the term 'gross income'—

"(a) Includes gains, profits, and income derived from * * * the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

"(b) Does not include the following items, which shall be exempt from taxation under this title: * * *

"(3) The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in gross income)."

Appellant first contends that the property turned over by the receiver was a gift, and therefore should not have been included as income.

In 1 Bouv.Law Dict.(Rawle's Third Rev.) 1352, a gift is defined as: "A voluntary conveyance or transfer of property, that is, one not founded on the consideration of money or blood."

In the instant case there was no absence of consideration, for appellant relinquished its claims, and the government relinquished most of the moneys impounded and granted a lease. There was no gift. This conclusion is supported by Burke-Divide Oil Co. v. Neal (C.C.A.7) 73 F.(2d) 857.

Edwards v. Cuba Railroad Co., 268 U.S. 628, 45 S.Ct. 614, 69 L.Ed. 1124, relied on by appellant, is an example of a pure gift, and is not contrary to our conclusion.

The other contention raised by appellant is that the trial court erred in disallowing as a deduction the sum of $152,571.96, which amount the Commissioner had allowed for depletion, and which was computed on the basis of the production for the various years 1914 to 1920, under the laws then in force. Appellant contends that it is entitled to a deduction for depletion of $516,598.10, which is the depletion deduction permitted under the law (Revenue Act of 1918) existing in 1920 at the time when it received from the receiver its share of the impounded funds.

Appellee contends, as the trial court held, that appellant is entitled to depletion deductions only from the date of its lease with the United States, and is not entitled to any depletion deduction for oil and gas produced prior to that date. This contention is based on the proposition that prior to the date of the lease appellant had no economic interest in the oil and gas.

In appellant's brief we find the following statement: "* * * If this court holds that these proceeds constituted taxable income to appellant in 1920, and that appellant is entitled to a depletion allowance in accordance with the law then in force, the parties have stipulated the amount which would be deductible."

Both appellant and appellee apparently concede that the depletion deduction allowed by the Commissioner was erroneous. The issue is, then, whether appellant had an economic interest in the oil and gas production prior to the date of the lease, for, if appellant had an economic interest in the oil and gas prior to the date of the lease, it is entitled to a depletion deduction. Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Helvering v. Falk, 291 U.S. 183, 188, 54 S.Ct. 353, 78 L.Ed. 719; Signal Gasoline Corporation v. Commissioner (C.C.A.9) 66 F.(2d) 886.

The burden of proof is on appellant to prove that it is entitled to a deduction for depletion. Signal Gasoline Corporation v. Commissioner (C.C.A.9) 77 F.(2d) 728, 729.

Generally speaking, any person who has a right to share in the oil produced "has an economic interest in the oil, in place, which is depleted by production." Palmer v. Bender, supra, 287 U.S. 551, 557, 53 S.Ct. 225, 227, 77 L.Ed. 489. The test in the instant case is, then, whether or not appellant had a right to share in the oil produced.

Law Opinion 1110 of the Treasury Department, published in the Internal Revenue Bulletin C.B. II-1, in 1923, held that the possessory rights, together with the claim of title asserted under the placer mining laws, which had not been finally adjudicated, were sufficient to show an eco-

nomic interest in the property. The Board of Tax Appeals seems to have made like holdings in National Petroleum & Refining Co. v. Commissioner, 28 B.T.A. 569; Ralph W. Crews v. Commissioner, 30 B.T.A. 615. Compare Champlin v. Commissioner (C.C. A.10) 78 F.(2d) 905.

There seems to be little doubt that appellant had an economic interest in the property prior to the date of the lease. Congress made provision for recognition of all such claims, and the United States thereafter in fact recognized the interest by accepting a conveyance of such interest to itself. We hold that appellant had an economic interest in the property prior to the date of the lease.

We find nothing in the government's brief to answer other than the following proposition, which has already been answered (after stating certain facts outlined above):

"It is submitted that these facts disclose that the taxpayer had no interest whatever—legal, economic or otherwise—in the property in question prior to 1920. * * *"

No case is cited to support such statement. It is also said: "* * * It is true that the Bureau of Internal Revenue has not been consistent in its application of the depletion provisions of the revenue acts in cases involving impounded funds. In recent years the courts have ruled on various aspects of the depletion question, and it would appear that the decision below is in agreement with the weight of judicial authority."

The Treasury Department ruled correctly on the matter in 1923. If the Commissioner had followed that ruling, there would have been no occasion for inconsistency of application. The statement that the trial court's decision was in agreement with the weight of judicial authority is unsupported by any citations.

In appellee's cross-appeal the specification of error is that the trial court erred "in holding and deciding that it had jurisdiction of the subject matter of this action to the extent of determining the correct amount of income tax, even though the profits taxes of the taxpayer were determined under the special assessment provisions of the 1918 Act."

Title 3 of the Revenue Act of 1918 (section 300 et seq.) is entitled "War-Profits and Excess-Profits Tax." Section 327 (40 Stat. 1057, 1093) provides that in four in-

stances the tax shall be determined as provided in section 328. This latter section provides a method by which the Commissioner shall compute such profits tax. The tax is distinct from the income tax under Title 2 (section 200 et seq.). In computing the income tax a credit is allowed, by section 236 (b), 40 Stat. 1080, for any profits tax paid under Title 3.

In the instant case, appellant was subjected to a profits tax, which, in computing the income tax, was allowed as a credit. Appellee's contention is that, since the special assessment of the profits tax is a discretionary matter, intrusted to the Commissioner, over which, in the absence of fraud, the courts may not interfere, and since that tax must be allowed as a credit in computing the net income for income tax purposes, the discretionary character of the Commissioner's action also extends to the determination of the net income, and therefore the trial court could not interfere with the income tax as imposed.

This contention must be rejected. See Welch v. St. Helens Petroleum Co. (C.C.A. 9) 78 F.(2d) 631, 636. In computing income taxes, the right to credits enumerated by the statute are not dependent on the exercise of the Commissioner's discretion. Such credits are by statute extended to all alike, and the Commissioner may not, by exercising his discretion with regard to one credit, preclude a taxpayer from using other deductions permitted by statute, over which the Commissioner has no discretion. The Commissioner's discretion extends to the amount of this particular credit, and not to the right to claim deductions. A contrary holding would permit the Commissioner to enforce the statute or refuse to enforce it, according to his will, contrary to the intention of Congress.

Appellee cites Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985; Heiner v. Diamond Alkali Co., 288 U.S. 502, 53 S.Ct. 413, 77 L. Ed. 921; Cleveland Automobile Co. v. United States (C.C.A.6) 70 F.(2d) 365, certiorari denied 293 U.S. 563, 55 S.Ct. 88, 79 L.Ed. 663, and Joseph Joseph & Bros. Co. v. United States (C.C.A.6) 71 F.(2d) 389. We believe none of them to be contrary to this holding.

Reversed.

WILBUR, Circuit Judge (dissenting).

I dissent and will briefly indicate the reason therefor. With the holding of the

majority that the amount of money paid to the appellant by the government in connection with the settlement was not a gift, I am in full accord. I think, however, that the amount so paid was income to the taxpayer which was not subject to a deduction for depletion of the value of the land or of the oil content thereof by reason of the extraction of oil therefrom, because the land did not belong to the petitioner. The settlement authorized by Congress and entered into by the petitioner by its terms which authorized a lease from the government in effect required the petitioner to recognize that until the settlement, and after it, the title to the oil land and its oil content was in the United States. It follows that the petitioner by the terms of the settlement of its rights admitted, and was required by the act of Congress to admit, that it had no interest in the land which belonged to the United States and which had been withdrawn from entry. On the other hand, the government unqualifiedly admitted the right of the petitioner to seven-eighths of the money impounded in court. That this admission was predicated upon the fact that the money was derived from the sale of oil extracted from the land occupied by the petitioner did not give the petitioner any interest in the land. On the contrary, it was a part of the consideration paid by the government (the other part was the lease) for a contract by which the petitioner in legal effect disclaimed any interest therein. Consequently, it was the United States, and not the petitioner, which suffered depletion of its lands by reason of the production of oil therefrom.