## JOHNSTON–CREWS CO. v. UNITED STATES.

District Court, E. D. South Carolina.
March 28, 1941.

1917, 1918 and 1919, pursuant to returns filed for those years.

The taxes so paid for the fiscal year 1917 were a total of $21,643.08. This sum was paid in installments on June 11, 1918, June 14, 1918 and June 30, 1920. On April 20, 1933, plaintiff filed a claim for refund of the taxes paid for the year 1917. This claim was rejected by the Commissioner of Internal Revenue on July 28, 1933.

The taxes so paid for the fiscal year 1918 were a total of $51,880.51. This sum was paid in installments on March 21, 1919, June 16, 1919, September 15, 1919 and December 16, 1919. On June 9, 1924, plaintiff filed a claim for the refund of taxes paid for the fiscal year 1918 to the extent of $30,663.35. On June 1, 1925, such claim was allowed by the Commissioner as to $4,530.93 and rejected as to the remainder claimed. Subsequently, claims seeking the refund of taxes paid for 1918 were filed by plaintiff in 1931 and 1933, these claims being rejected by the Commissioner.

The taxes so paid for the fiscal year 1919 were a total of $49,228.49. This sum was paid in installments on February 28, 1920, May 15, 1920, August 18, 1920 and November 17, 1920. On June 9, 1924, plaintiff filed a claim for the refund of taxes paid for the fiscal year 1919 to the extent of $30,663.35. On July 1, 1936, such claim was allowed by the Commissioner as to $7,288.94 and rejected as to the remaining claim. Subsequently, claims seeking the refund of taxes paid for 1919 were filed by plaintiff in 1931 and 1933, these claims being rejected by the Commissioner.

The claims, upon which this suit is predicated, filed by plaintiff were based on the ground that deductions from the gross returned incomes attributable to miscellaneous items such as officer's salaries, allowances for wear and tear, and improper valuation of accounts receivable, should have been made.

Following the rejection partially or wholly of the claims, plaintiff instituted this action. Defendant thereupon filed a motion for summary judgment sufficing to raise certain issues which will be discussed. The affidavit of the Commissioner in support of the allegations of the motion was appended thereto. Just prior to the hearing on defendant's motion, plaintiff likewise filed a motion for summary judgment, with affidavit, praying for such

Sidney Rittenberg, of Charleston, S. C., for plaintiff.

Claud N. Sapp, U. S. Atty., of Columbia, S. C., and Ben Scott Whaley, Asst. U. S. Atty., of Charleston, S. C., for defendant.

LUMPKIN, District Judge.

Plaintiff, a South Carolina corporation, engaged in the business of wholesale merchandise, paid income and profits taxes for the fiscal years ending November 30,

relief and seeking a hearing on its motion coincidental with the trial of the case on its merits, should defendant's motion be denied.

■ On November 26, 1940, hearing was held on the respective motions and at such hearing the Court directed that defendant file its answer, which was done. Such a direction was without prejudice to the efficacy or pendency of defendant's motion for summary judgment. Rule 56, Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c.

■ I have examined the pleadings, the respective motions and their affidavits and have given consideration to the arguments and briefs of counsel and based thereon, I am of the belief that there is no real dispute between the parties as regards the basic facts of this action. The controversy is one of law and the question of summary judgment is therefore properly to be considered by this Court. Securities and Exchange Commission v. Payne, D.C.S.D.N.Y., 35 F.Supp. 873, decided November 15, 1940; Moore's Federal Practice, par. 56.01; pp. 3174, 3175.

There are two questions raised by defendant's motion for summary judgment; firstly, whether the Court has jurisdiction to hear the cause as to the fiscal years 1918 and 1919 since plaintiff requested and was granted relief under Sections 210 and 327 of the Revenue Acts of 1917 and 1918, 40 Stat. 307, 1093, respectively; secondly, whether plaintiff (a) failed to file timely claims for the refund of income and profits taxes paid for the fiscal year 1917, or (b) in the absence of such timely claims, whether the Commissioner reduced plaintiff's invested capital so as to invoke the provisions of Section 252 of the Revenue Act of 1921, 42 Stat. 268, being in effect Section 284(c) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 220, thereby lifting the bar of the statute of limitations.

As regards the first question:

The Revenue Acts of 1917, c. 63, 40 Stat. 300, and 1918, c. 18, 40 Stat. 1057, which apply to plaintiff's income for the fiscal years 1918 and 1919 since they began on December 1, of the years 1917 and 1918, respectively, see Section 205(a) and (b) of the Revenue Act of 1918, 40 Stat. 1061, imposed an excess profits tax at high rates. Because such a tax might, in a given condition, become unduly burdensome, the Congress provided that in certain situations the tax should be computed in a special manner. This alternative method of assessment, which is provided for by Section 210 of the Revenue Act of 1917, infra, and Sections 327 and 328 of the Revenue Act of 1918, infra, is known as a special assessment.

Plaintiff sought relief for the fiscal years 1918 and 1919 under Sections 210 and 327 of the Revenue Acts of 1917 and 1918. This relief which consisted of the determination and making of a special assessment by the Commissioner was undertaken pursuant to plaintiff's special request and plaintiff's taxes were computed under the special assessment provision because of the existence of certain abnormal conditions which had affected plaintiff's income for those years. But plaintiff now seeks in this action to have the computation of its income reviewed by this Court and adjudged to be less than the figure employed by the Commissioner in giving plaintiff the benefit of Section 210 and Sections 327 and 328 of the Revenue Acts of 1917 and 1918, respectively.

■ Once a taxpayer has applied for and been granted the extraordinary relief afforded by Section 210 and Sections 327 and 328, he has by his own act removed himself from judicial relief. Welch v. Obispo Oil Co., 301 U.S. 190, 57 S.Ct. 684, 81 L.Ed. 1033; Heiner v. Diamond Alkali Co., 288 U.S. 502, 53 S.Ct. 413, 77 L.Ed. 921; Michigan Iron & Land Co. v. United States, Ct.Cl., 10 F.Supp. 563. He surrenders the right further to contest in court the correctness of the Commissioner's determination with respect to any of the factors necessary to his discretionary findings and the computation of the tax. Central Iron & Steel Co. v. United States, Ct. Cl., 6 F.Supp. 115, certiorari denied, 293 U.S. 563, 55 S.Ct. 75, 79 L.Ed. 663; United States v. Henry Prentiss & Co., 288 U.S. 73, 53 S.Ct. 283, 77 L.Ed. 626.

■ In the Prentiss case, the Commissioner sent out the usual notice that unless the taxpayer acquiesced in the net income and invested capital, no consideration would be given to the application for special assessment. The evidence there did not disclose an acquiescence, but the Supreme Court said (288 U.S. at pages 87, 88, 53 S.Ct. at page 286, 77 L.Ed. 626) that the taxpayer's conduct in proceeding with its application for a special assessment "was a tacit assent to the condition imposed by the Commissioner and an

abandonment of any objection that capital and income had been erroneously valued if valuation was to be ascertained according to the normal method." It is pointed out (288 U.S. at page 88, 53 S.Ct. at page 286, 77 L.Ed. 626) that there is a basis for the argument that the taxpayer, having won the privilege of a hearing on its terms, is estopped from retracting its assent and resuming the abandoned ground. That observation is particularly relevant here for at least two reasons. One is that not only did the taxpayer win the privilege of a hearing, but it actually received the benefits of a special assessment. The other is that retraction, if permitted, would enable it to retain such benefits, while the Commissioner would be barred by the statute of limitations, if not by the principles of res judicata, from asserting a deficiency in tax which would obviously be due as a result of the changed net income. Cf. Continental Products Co. v. Commissioner, 1 Cir., 66 F.2d 434; Newaygo Portland Cement Co. v. Helvering, 64 App. D.C. 278, 77 F.2d 536.

Any doubt regarding whether the Court has jurisdiction for the years 1918 and 1919 is removed by the pronouncements of the Supreme Court in United States v. Henry Prentiss & Co., supra. The Court there declared (288 U.S. at page 84, 53 S.Ct. at page 284, 77 L.Ed. 626): "The act of the Commissioner of Internal Revenue in granting or refusing a special assessment under section 327(d) of the Act of 1918 is discretionary and administrative, not subject to be challenged in any court, at least in the absence of fraud or other irregularities. Williamsport Co. v. United States, 277 U.S. 551, 562, 48 S.Ct. 587, 72 L.Ed. 985."

In support of its position, plaintiff cites McKeever v. Eaton, D.C.Conn., 6 F.Supp. 697, and United States Paper Exports Ass'n v. Bowers, D.C.S.D.N.Y., 6 F.Supp. 735. I am not inclined to follow these cases. In the McKeever case, the Commissioner continued to give consideration to the merits of the case after rendition of the special assessment whereas here, such did not occur. Further, in the McKeever case, the opinion recites that the claims for refund were timely filed, whereas in the present controversy, the "essential" claims (see 6 F.Supp. at page 702 of the McKeever opinion) were not timely filed and the Commissioner's rejection of the belated claims was by action of a pro

forma character. The view expressed in the McKeever case has been repudiated in Con P. Curran Printing Co. v. United States, Ct.Cl., 14 F.Supp. 638, and the effect of the McKeever and Paper Exports cases is overborne by Welch v. Obispo Oil Co., 301 U.S. 190, 57 S.Ct. 684, 81 L.Ed. 1033, with a concurring view being expressed in Michigan Stove Co. v. Woodworth, D.C.E.D.Mich., 38 F.Supp. 396, and cases there cited.

Here, plaintiff prayed for special assessment relief to the Commissioner and this was granted by him. When this occurred, plaintiff abandoned its right to possible redress in the Courts. See Welch v. Obispo Oil Co., supra; Cleveland Automobile Co. v. United States, 6 Cir., 70 F.2d 365; Joseph, Joseph & Bros. Co. v. United States, 6 Cir., 71 F.2d 389, 391. The door is shut to any consideration of plaintiff's claim as to these years for it has elected its choice of remedies by applying to the Commissioner for relief, and must abide by its decision. Alexander v. Rea, 10 Cir., 110 F.2d 898.

With regard to the second question:

Plaintiff paid its taxes for the fiscal year ending November 30, 1917 in installments, the last payment having been made on June 30, 1920. On April 20, 1933, plaintiff filed a claim for the refund of the taxes earlier paid. Section 284(b) (1) of the Revenue Act of 1926 declares that with respect to taxes paid under the Revenue Act of 1917, no credit or refund shall be allowed after four years from the time the tax was paid unless before the expiration of such period a claim therefor is filed by the taxpayer. That is to say, the statutory period of limitation within which to file the requisite claim for refund is four years from the payment of the tax.

From an inspection of plaintiff's claim for 1917 taxes it is patent that the claim is not timely. Thirteen years were allowed to elapse after the last payment before plaintiff filed its claim, nine years belatedly. In the absence of a saving clause, plaintiff is barred by limitation from the recovery sought here.

But it is plaintiff's argument that the bar of the statute is lifted by Section 284(c) of the 1926 Revenue Act, which is in effect Section 252 of the Revenue Act of 1921, for the asserted reason that the Commissioner reduced plaintiff's invested capital in a manner defined by Sec-

**548**

tion 284(c). The Commissioner having reduced plaintiff's invested capital, plaintiff insists that no claim for refund is needed as a prerequisite to a consideration of its claim for taxes allegedly improperly paid.

An examination of the attending facts discloses that there has been no reduction of plaintiff's invested capital, that Section 284(c) is without application and that the bar of the statute .precludes a consideration of plaintiff's contention that its taxes for 1917 have been overpaid.

In. paragraph "9" of the complaint, plaintiff avers that: "The Commissioner of Internal Revenue reduced plaintiff's statutory invested capital, for the fiscal years following each of the fiscal years for which the taxes were overpaid (viz., the years here in suit, 1917, 1918 and 1919), in the amounts of the taxes overpaid for the preceding fiscal years herein and the said overpayments of tax were due to the failure of plaintiff to take adequate deductions for the years of overpayment." (Material in parentheses supplied.)

That is to say, the Commissioner reduced the invested capital for the fiscal years following each of the fiscal years 1917, 1918 and 1919—and is therefore entitled to a refund for 1917, 1918 and 1919 despite the failure to file timely claims for those years.

I have heretofore expressed my view that the years 1918 and 1919 are not susceptible of consideration, inasmuch as I am deprived of jurisdiction because of the action of special assessment. I refer now to those years only to show that there has been no reduction of invested capital and only because of any possible effect such reference may have upon the sole year remaining to be considered, viz., the fiscal year 1917.

The affidavit of the Commissioner filed as an exhibit to defendant's motion for summary judgment and prepared from the records of the Bureau of Internal Revenue reveals that there was no reduction of invested capital for the years 1918, 1919 and 1920, nor, indeed, for the year 1921. Whether the invested capital for 1917 was reduced is immaterial as a reduction for this year would only entitle plaintiff to a refund for previous years, i. e., 1916–15–14, etc. Section 284(c) of the Revenue Act of 1926, supra. For 1918 and 1919, the Commissioner made no determination of plaintiff's invested capital, having at the instance of plaintiff made a special assessment of plaintiff's taxes for those years. Having made no determination, no reduction of plaintiff's invested capital could of necessity have been made. And for 1920 and 1921, the returns filed by plaintiff were accepted by the Commissioner without alteration. The affidavit of the Commissioner contains the assertion that at no time did he reduce plaintiff's invested capital for the years involved.

The right to a return of overpayments is made to depend upon a decrease in the invested capital by the Commissioner. First Nat. Bank of Kansas City, Mo. v. United States, 8 Cir., 65 F.2d 536, 538, certiorari denied, 290 U.S. 652, 54 S.Ct. 69, 78 L.Ed. 565; Denver Rock Drill Mfg. Co. v. United States, Ct.Cl., 59 F.2d 834, certiorari denied, 287 U.S. 651, 53 S.Ct. 115, 77 L.Ed. 563; Southwestern Oil & Gas Co. v. United States, D.C.W.D.Pa., 29 F.2d 404, 408, affirmed, 3 Cir., 34 F.2d 446, certiorari denied, 280 U.S. 601, 50 S.Ct. 82, 74 L.Ed. 646; McCarthy v. Phillips, D.C.M.D.Pa., 13 F.Supp. 293.

It may be thought that some of the above-mentioned cases are predicated on the theory that the particular adjustments to invested capital by the Commissioner are immaterial if the net result does not decrease the invested capital as reported by the taxpayer. And, in that respect they differ from the recent decision of the Circuit Court of Appeals for the Fourth Circuit in the case of United Pocahontas Coal Co. v. United States, 117 F.2d 175. In that case the Commissioner had made adjustments to invested capital both upward and downward, with the result that there had been a net increase in invested capital over that reported by the taxpayer. Nevertheless, the Fourth Circuit allowed recovery of 1919 taxes because of an adjustment to invested capital for 1921 through failure of the taxpayer to take adequate deductions for depreciation and depletion in 1919. In the instant case, however, the Commissioner has not disturbed invested capital in any manner whatsoever. For the years 1918 and 1919, the invested capital was not taken into consideration at all in the determination of the tax, while for the years 1920 and 1921, the invested capital as returned by plaintiff was accepted by the Commissioner. Therefore, I am of the opinion that the instant case is in no manner affected by the decision in the Pocahontas case, supra.

The purpose of the statute is given in the following excerpt from Denver Rock Drill Mfg. Co. v. United States, supra, 59 F.2d at pages 836, 837:

"The manifest intent and purpose of section 284(c) of the Revenue Act of 1926 and similar provisions of prior revenue acts were to authorize a refund for prior years only when the taxpayer is called upon to pay a greater excess-profits tax for the year under consideration than he would be required to pay if no adjustments of deductions taken in prior years were made.

\* \* \* \* \*

"The situation contemplated by section 284(c), which will give the taxpayer a right to a refund for prior years, is a decrease of invested capital for the year under audit, which increases the profits tax for that year."

This was likewise stated to be the purpose of the statute in A. Schrader's Son v. United States, 2 Cir., 51 F.2d 1038, certiorari denied, 284 U.S. 661, 52 S.Ct. 37, 76 L.Ed. 560; and in Southwestern Oil & Gas Co. v. United States, supra.

The facts of the instant case render the statute inapplicable. During none of the years in question was the invested capital returned by plaintiff reduced. In the absence of such reduction, Section 284(c) cannot operate and in the absence of its operation, the lack of timeliness of plaintiff's claim for refund is an effective bar to recovery by plaintiff for the fiscal year 1917.

An order reflecting these views and a judgment in accordance therewith will be entered forthwith.