MICHIGAN IRON & LAND CO. v.
UNITED STATES.

No. 41973.

Court of Claims.

April 8, 1935.

Ralph W. Barbier, of Detroit, Mich. (Raymond H. Berry, Claude H. Stevens, Arthur R. Wood, and Arthur L. Evely, all of Detroit, Mich., on the brief), for plaintiff.

James A. Cosgrove, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (William W. Scott and John T. Koehler, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

The case presents the questions whether, where the Commissioner of Internal Revenue has granted a special assessment of profit taxes pursuant to sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093), a court may in an action for a refund review the Commissioner's determination of the taxpayer's net income, and (2) whether, if such power of review exists, the Commissioner properly valued the taxpayer's real property holdings as of March 1, 1913.

The plaintiff is a Michigan corporation and possessed large timber and land holdings which had been acquired before the income tax laws had been passed. These holdings were sold in 1920 for the sum of $2,700,000.

In March, 1921, the plaintiff filed returns for income and profits taxes for 1920 which placed the value of these holdings as of March 1, 1913, at approximately $3,000,000, which reflected a loss of some $300,000 from the sale price. A loss and not a profit being shown by the return, no taxes were payable or paid. The Commissioner, upon an audit of the return, proposed certain changes, resulting from a change in the March 1, 1913, valuation of these holdings. The Commissioner fixed the March 1, 1913, value of these holdings at $930,000 instead of $3,000,000, as stated in the return, and with this valuation a large profit was determined on the sale and not a loss. As a result of this audit, the Commissioner made a jeopardy assessment in October, 1925, of approximately $535,000 for taxes due for 1920. Subsequently this amount was reduced to $462,000 by the allowance of certain items not now in dispute. Notwithstanding the jeopardy assessment, the Bureau of Internal Revenue allowed this amount to remain open and unpaid during the period hereinafter mentioned.

The plaintiff protested the assessment on the ground that the 1913 timber valuation as fixed by the Commissioner was too low, and as a result of this protest many conferences and negotiations were had looking to an agreement or settlement of this disputed valuation. A forestry questionnaire was submitted by plaintiff, a field examination was made by engineers of the Commissioner, and numerous conferences were held for the purpose of arriving at a March 1, 1913, valuation of the property. That factor was alone in dispute. The plaintiff was represented at all of these conferences by its president and attorney, who had full power and authority to act for it.

On May 25, 1927, the plaintiff filed with the Commissioner the following request signed by its president, R. P. Hudson, and drawn by its attorney, Raymond H. Berry: "Request is hereby made that the tax liability of this corporation be determined under the provisions of sections 327 and 328 of the Revenue Act of 1918, for the reasons that invested capital under the provi-

sions of section 326 of the Revenue Act of 1918 cannot be determined and the income on which tax is computed was received from the sale of capital assets."

At the time this request was made the representatives of plaintiff above named were informed that $1,600,000 was the maximum amount which would be allowed for the March 1, 1913, value, and they would have to agree to that valuation before special assessment would be granted. Subsequently, various telegrams, which are fully set out in the findings and which will be referred to hereafter in the discussion of another feature of this case, passed between the plaintiff and the Bureau which resulted in the plaintiff agreeing to the March 1, 1913, value of $1,600,000, as proposed by the Commissioner. The testimony of both Hudson, the president, and Berry, the attorney, clearly establishes that they agreed to this amount, and the clear intent of the telegrams was to settle that question so that the Commissioner could proceed under the special assessment provision in arriving at the tax liability. Both were fully informed and understood that their agreement to the March 1, 1913, valuation was a condition precedent to the granting of the request for special assessment.

Upon reaching an agreement as to the March 1, 1913, value, the Commissioner granted special assessment and proceeded with the determination of plaintiff's liability under the special assessment provisions, and the tax was reduced from approximately $462,000 to $116,000. Upon receipt of the notice and demand, plaintiff paid the tax so assessed.

Approximately a year later plaintiff filed a claim for refund of the entire amount paid, with interest, on the ground that the March 1, 1913, value of $1,600,000 allowed was much less than the correct value, and that a proper determination of such value would show a loss which, in turn, would result in the elimination of all taxable income for 1920. Upon the claim being rejected in 1931, plaintiff filed this suit in May, 1932.

The defendant has filed a special answer raising the issue of estoppel. The plaintiff claims a revision by this court of the values of the property as of March 1, 1913, but the statute of limitation has interposed a bar for the collection of any greater amount than that assessed and collected by the Commissioner in special assessment, so retraction would work an unfair hardship on the defendant were the values of 1913 found

smaller than those agreed upon. Having agreed to the value, having had special assessment granted, and the statute having run, it is too late to retract now. United States v. Prentiss & Co., 288 U. S. 73, 88, 53 S. Ct. 283, 285, 77 L. Ed. 626. In passing, we think it imperative to remark that, if the doctrine of estoppel is ever to be applied to special assessment cases, this case falls fully under that doctrine of the law. However, we do not desire to rest the case on this point as we feel there is a more fundamental principle that precludes our consideration of the case.

The more serious question relates to our jurisdiction of the case on its merits after the Commissioner had made, upon written request of plaintiff, a special assessment determination. In its application for special assessment the plaintiff had stated its invested capital could not be computed under section 326 of the Revenue Act of 1918 (40 Stat. 1092), and its income was received from the sale of capital assets. The sale price of the capital assets was known, but as the assets had been acquired before the income tax laws were enacted, it was necessary to know the value of these assets on March 1, 1913, in order to ascertain what income had been gained on which to compute the tax. The Commissioner required as a condition precedent to passing on the special assessment request that the plaintiff agree to the March 1, 1913, valuation of $1,600,000 of its capital assets. This condition is considered a reasonable requirement and one the Commissioner has a right to impose. See Prentiss Case, supra. The Commissioner, in answer to a telegram requesting "* * * you proceed with case on valuation basis discussed at our last joint conference," replied "* * * acquiescence in value required before action can be taken looking toward special assessment. If value proposed in last conference is agreed to, advise by wire, then procedure outlined in that conference will be followed."

To this telegram plaintiff replied, "Compute tax under special assessment on valuation of timber one million six hundred thousand dollars as agreed to in conference. * * *"

The contention is now made by the plaintiff that there was no agreement as to timber valuation because plaintiff's attorney had not received the consent of certain stockholders. The attorney had full power to bind the taxpayer, and the evidence shows that the full consent of the president of the

company was given before the telegrams were sent. In our opinion, there was a clear and unmistakable agreement to the March 1, 1913, valuation. Any other construction of these telegrams to the Commissioner would necessarily imply bad faith on the part of the parties dealing with the Commissioner, which we are not willing to impute. We are unwilling to say that the attorney for the plaintiff so artfully drew these telegrams that the Commissioner would be misled into believing a definite agreement had been reached whereas an avenue of escape had been provided if the tax imposed did not meet with plaintiff's idea of what should be paid. The evidence discloses that the attorney knew approximately what the tax would be when he agreed to the valuation proposed. After this valuation had been agreed to, the Commissioner computed the net income and granted special assessment under sections 327 and 328 of the Revenue Act of 1918. The granting of special assessment "is discretionary and administrative, not subject to be challenged in any court, at least in the absence of fraud or other irregularities. Williamsport Co. v. United States, 277 U. S. 551, 562, 48 S. Ct. 587, 72 L. Ed. 985." United States v. Prentiss & Co., supra. No fraud or other irregularities are alleged or proved.

As a result of the granting of special assessment, the plaintiff's taxes were reduced from $462,000 to $116,000. No appeal was taken to the Board of Tax Appeals from that determination, and the taxes were assessed and paid. It is now proposed by the plaintiff that this court set aside this discretionary act of the Commissioner and find a different value for the timberlands as of March 1, 1913. This would entail going into one of the factors which entered into the exercise by the Commissioner of his discretionary power. In Heiner v. Diamond Alkali Co., 288 U. S. 502, 507, 53 S. Ct. 413, 415, 77 L. Ed. 921, the Supreme Court holds: "It is beyond the power of a court to usurp the Commissioner's function of finding that special assessment should be accorded, and equally so to substitute its discretion for his as to the *factors* to be used in computing the tax." (Italics ours.)

When the taxpayer has asked for and received the benefits of the discretionary action of the Commissioner, there can be no revision or alteration of the computation of the tax by judicial review.

In Central Iron & Steel Company v. United States, 6 F. Supp. 115, 116, 79 Ct. Cl. 56, certiorari denied 293 U. S. 563, 55 S. Ct. 75, 79 L. Ed. ——, we held: "When the taxpayer upon application obtains a determination of his tax under the special assessment provisions, he surrenders the right further to contest in court the correctness of the Commissioner's determination with respect to any of the factors necessary to his discretionary findings and the computation of the tax. The system provided by law for a judicial review of the Commissioner's actions in tax cases contemplates that the court shall render final judgment, and, since the court is without jurisdiction to substitute its decision for that of the Commissioner as to the factors to be used in computing the tax, it cannot proceed with a case as though special assessment had not been applied, and the court is likewise without jurisdiction to decide the question presented and remand the case to the Commissioner for further exercise of his discretionary powers to determine whether or not the change in net income results in a greater or less profits tax."

See, also, Bradford v. United States, 6 F. Supp. 117, 79 Ct. Cl. 89, certiorari denied 293 U. S. 564, 55 S. Ct. 101, 79 L. Ed. ——.

The plaintiff contends that these decisions do not apply in this case for the reason it is not asking for the retention of special assessment and that when this decision of the Commissioner is opened up and the case tried by this court on the merits the March 1, 1913, value of the land will be so much increased that no tax will be due. We cannot indulge in an anticipatory hope which is subject to vanishment should the evidence in the trial on the merits reveal a lower valuation than that agreed to by the parties. In such a contingency the increased tax could not be collected because of the bar of the statute. In other words, should the court turn a nonjudicable matter into a judicable matter, which it has no power to do, the result could only benefit the plaintiff, and the defendant could not benefit no matter what the evidence showed. The application of plaintiff was for the computation of its tax under section 328, and having received that discretionary privilege, and the results not meeting with what was expected, the plaintiff now asks this court to compute its tax under section 301 (40 Stat. 1088), which is the statute the plaintiff asked the Commissioner not to apply in computing its tax. A taxpayer cannot play fast and loose, blow hot and cold, when requesting the exercise of discretionary powers. A disappointing resultant does not justify retroversion of the

written request for discretionary action which has been accorded. Having applied for and been granted the extraordinary relief these sections afford, he has by his own act removed himself from juridical relief. Cleveland Automobile Co. v. United States (C. C. A.) 70 F.(2d) 365.

When the plaintiff applied for relief under sections 327 and 328, it was for the purpose of being relieved of the tax which would have been imposed under section 301. As a matter of fact, under special assessment the total tax was greatly reduced.

We have no concern with the results, but only with the application of the legal provisions which the Commissioner has used.

The plaintiff is not entitled to relief. The petition is dismissed. It is so ordered.