## MONARCH MILLS v. UNITED STATES.

### No. 42118.

Court of Claims.

April 6, 1942.

---

[1] United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914.

336

340

Howe P. Cochran, of Washington, D. C. (Margaret F. Luers, of Washington, D. C., on the brief), for plaintiff.

John W. Hussey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson, Fred K. Dyar, J. P. Wenchel, and H. S. Fessenden, all of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

The plaintiff is the successor of the Monarch Cotton Mills. It succeeded to all the assets and assumed all the liabilities of the latter on January 1, 1918.

The Monarch Cotton Mills regularly kept its books on the basis of a fiscal year beginning October 1 and ending September 30 of the succeeding year; it made its financial statements on this basis, and since the passage of the first income tax Act it had filed its income tax returns to the Federal Government on this basis. However, the Commissioner of Internal Revenue in auditing its returns for the fiscal year October 1, 1916 to September 30, 1917 and for the three-months period from October 1, 1917 to December 31, 1917 disregarded the fiscal year and assessed a tax based on the calendar year. It is alleged that this resulted in an overassessment.

Section 13(a) of the Revenue Act of 1916, 39 Stat. 756, 770, provides:

"The tax shall be computed upon the net income as thus ascertained, received within each preceding calendar year ending December thirty-first: Provided, That any corporation * * * may designate the last day of any month in the year as the day of the closing of its fiscal year and shall be entitled to have the tax payable by it computed upon the basis of the net income ascertained as herein provided * * *; and it shall give notice of the day it has thus designated as the closing of its fiscal year to the collector of the district in which its principal business office is located * * *."

Where a corporation operates on a fiscal years basis, it "shall be entitled to have the tax payable by it computed upon" this basis. Section 206 of the Revenue Act of October 3, 1917 (40 Stat. 300, 305), is to the same effect. This was not a privilege the Commissioner could grant or withhold; it was a privilege to which the corporation was entitled as of right.

It is true the section requires the taxpayer to give notice to the collector of its fiscal year, but this is not made a condition of its right to file a return on this basis and have its income and tax so computed, if its books were so kept. But, whether or not this is so, the facts nevertheless show that this taxpayer kept its books and had been making its tax re-

turns on a fiscal year basis and, therefore, the collector already had notice that it was operating on a fiscal year basis and had designated September 30 as the last day of its fiscal year. The provisions of the act were therefore complied with.

It was, accordingly, unlawful for the Commissioner of Internal Revenue to assess taxes against this taxpayer on any basis other than on the basis of its fiscal year. Any overassessment resulting from an assessment on any other basis the plaintiff is entitled to recover, unless the defendant is right in its contention that we have no jurisdiction of this case because the assessment as finally made was under section 210 of the Revenue Act of 1917.

In order to decide this question a brief summary of the facts is necessary.

Within the time allowed by law the taxpayer filed income and profits tax returns for its fiscal year ending September 30, 1917. On December 31, 1917 it sold all its assets to the plaintiff and went out of business. Plaintiff then inquired of the Collector of Internal Revenue whether or not it should make returns on behalf of its predecessor for the remaining three months of the year 1917, and upon being advised by the collector that it should, it did so, sometime in the early part of the year 1918.

Subsequently, a revenue agent made an examination of the taxpayer's books and filed his report on October 19, 1922. In this report the taxpayer's income and invested capital were computed on the basis of its fiscal year, and taxes for the period October 1, 1916 to September 30, 1917, and from October 1, 1917 to December 31, 1917 were computed accordingly. However, the Commissioner of Internal Revenue, for some unknown reason and contrary to the statute, determined that the taxes should not be so computed, but should be computed for the period January 1, 1917 to December 31, 1917. Plaintiff was notified of his computation on this basis by letter dated January 29, 1923. It appeared from this letter that the Commissioner had taken one-fourth of the taxpayer's income for the fiscal year ending September 30, 1917, and applied that to the calendar year 1916, so as to put the corporation on a calendar year basis for 1916, and he had taken three-fourths of the income for the fiscal year ending September 30, 1917 and applied that to the calendar year 1917. To this he added the income for the last three months of 1917 so as to get the corporation on a calendar year basis for 1917. He then proceeded to compute the income and profits taxes on the aggregate income thus arrived at.

This was a purely arbitrary and unwarranted allocation of income and capital. Protest was made against this by the taxpayer, who insisted that the income and invested capital could and should be computed on the fiscal year basis, but on February 11, 1924, the Commissioner reaffirmed the calendar year basis of computation.

In both the letter of January 29, 1923 and that of February 11, 1924 the Commissioner, following the same unauthorized and arbitrary method, computed the taxpayer's invested capital as of December 31, 1916. The letter of January 29, 1923 showed that invested capital to be $1,389,110.89, and the letter of February 11, 1924 showed it to be $1,384,299.13. The Revenue Agent's report showed invested capital at the beginning of the fiscal year, October 1, 1916, to be $1,282,514.12

After receipt of the letter of February 11, 1924, in which the Commissioner insisted upon computing the tax on the calendar year basis, the taxpayer apparently asked the Commissioner to assess the tax so computed under the provisions of section 210 of the Revenue Act of 1917, providing for an assessment in the way therein laid down in a case where "the Secretary of the Treasury is unable * * * satisfactorily to determine the invested capital."

The record compels the conclusion that the reason the taxpayer finally asked for consideration under section 210 was solely because of the situation produced by the refusal of the Commissioner to follow the statute by computing the taxes on the taxpayer's accounting period. The Commissioner granted the taxpayer's application and, persisting in his course of computing the tax on a calendar year basis, he assessed taxes computed under section 210 of the Act at a sum of $28,766.51 less than the sum previously assessed.

Upon receipt of this letter the taxpayer wrote the Commissioner that assessment under this section "is not contested," but it claimed the tax assessed was excessive because, it alleged, the Commissioner did not use the proper comparatives. This protest, however, was denied and the taxes were assessed in accordance with the Commissioner's letter of March 23, 1925.

342

It should be said further that in 1929 the taxpayer filed a claim for refund in which it stated that it was entitled to further relief under section 210 because "its invested capital cannot be satisfactorily determined and proper comparatives were not used in the previous determination." This had reference, of course, to its invested capital for the calendar year 1917; the taxpayer never at any time said that its invested capital could not satisfactorily be determined if the basis of the fiscal year was used. Neither it nor the Revenue Agent had experienced any difficulty in doing so. The taxpayer never claimed assessment under section 210 if the fiscal year basis was used.

But the defendant says that under numerous decisions of the Supreme Court, this court, and other courts, we have no jurisdiction of this case because the assessment was under the relief provision of 1917. We would agree with this position if the taxpayer had requested assessment under section 210 for its correct taxable year, and if the Commissioner had granted special assessment for its correct taxable year; but this taxpayer neither requested special assessment for its proper taxable year, to wit, its fiscal year, nor did the Commissioner grant special assessment for the fiscal year. What the taxpayer did request, as a last resort, and what the Commissioner granted, was special assessment for a false taxable year and upon an income and capital arbitrarily computed therefor.

The taxpayer had insisted from the beginning that its taxes had been assessed on the wrong basis, and that this had resulted in a greater assessment than it owed, and it had undertaken to induce the Commissioner to assess it on the proper basis, insisting always that its income and invested capital could be clearly computed; but the Commissioner would not do so. As a last resort, the taxpayer said to the Commissioner, if you will not assess our taxes on the proper basis, then we ask you to consider our profits tax liability for the false period adopted by you under section 210. But the taxpayer at no time has requested the Commissioner to assess its taxes for its true taxable year under section 210; it never has said that its invested capital for its actual and correct taxable year could not satisfactorily be determined.

■ The Revenue Act of 1917 furnished no warrant for the action of the Commissioner in assessing the taxes on the basis of the calendar year, and this unlawful act of the Commissioner drove the taxpayer into requesting special assessment. The necessity for requesting special assessment and the ground upon which it was requested were not the result of the condition set out in the Act, to wit, that the Secretary of the Treasury could not satisfactorily determine the invested capital, but was the result of the wrongful action of the Commissioner in assessing the taxes on a calendar year basis, instead of on the taxpayer's fiscal year. The taxpayer, therefore, is not bound by the Commissioner's action and is not precluded from maintaining this suit by reason of a special assessment made outside the framework of the statute. The record shows that the income and capital for the correct taxable year can be determined.

This is in no way inconsistent with the cases cited in the defendant's brief, or with any other decision of the Supreme Court, or of any other court, so far as we are advised. In none of the cases cited were the taxes assessed on the basis of a false and arbitrary fiscal year. In Cuban-American Sugar Company v. United States, (27 F.Supp. 307, 89 Ct.Cl. 215; 309 U.S. 681) arising under the 1917 Act, and in Michigan Iron & Land Co. v. United States, 10 F.Supp. 563, 81 Ct.Cl. 330, and in other cases arising under the 1918 Act, we held, that, since the taxpayer had requested and insisted upon assessment under the relief sections, it could not complain because its request had been granted. In the case at bar, however, as we have pointed out above, the taxpayer has never requested special assessment of taxes computed on its true accounting period. It requested special assessment for the false period adopted by the Commissioner, and not for its true period. This does not preclude it from bringing suit here for refund of any amount exacted over the amount due computed under section 207 for its accounting period as fixed by the Act.

■ The defendant next contends that in computing invested capital for the period beginning October 1, 1917 we should take the average invested capital, not only for the three months of 1917 during which plaintiff's predecessor was in business, but also the nine additional months necessary to make up a twelve-month period, and average the invested capital over the full twelve months; or, if wrong in this, that at least it should be averaged over the

period from October 1, 1917 until the date it surrendered its charter on May 18, 1918. We are of the opinion that the invested capital of plaintiff's predecessor should be averaged over the three months' period of 1917 during which it was in business. It went out of business on December 31, 1917, and turned over to the plaintiff all of its assets of every description and was relieved by the plaintiff of all of its liabilities. Although its charter was not surrendered until later, it had ceased all operations and never intended to resume them. Under the authorities, the three months' period is to be considered a taxable year and the profits tax computed accordingly. Richard A. Strong et al. v. United States, 62 Ct.Cl. 67; Lowell & Andover Railroad Co. v. Commissioner, 8 B.T.A. 501; United States v. Carroll Chain Co., D.C., 8 F.2d 529; Pennsylvania Chocolate Co. v. Lewellyn, D.C., 27 F.2d 762, 764.

We desire to call attention to a matter of practice arising in this case. The defendant has filed two specific exceptions to the commissioner's findings, but, in addition, it says the commissioner's findings are not sufficiently comprehensive and, therefore, asks that its own statement of facts be adopted, without specifically pointing out wherein the commissioner's findings are insufficient. Such an exception does not comply with our rules and has not been considered.

The entry of judgment will be deferred until the filing of a stipulation by the parties, or, in the absence of a stipulation, until the incoming of a report by a commissioner as to the correct amount due plaintiff computed in accordance with this opinion. It is so ordered.

JONES and LITTLETON, Judges, concur.

MADDEN, Judge (dissenting).

I do not agree with the decision of the majority.

In January 1923 the Commissioner of Internal Revenue assessed plaintiff's profit taxes on the calendar year basis, plaintiff having made its return on a fiscal year basis. I assume, as the majority has found, that his doing so was erroneous and that he should, upon request, have corrected the error. So far as the record shows, he was never requested to correct the error, at least until 1929. In the meantime, plaintiff had, at some time prior to March 1925, requested the Commissioner to assess its profits taxes for 1917 under the provisions of Section 210 of the Revenue Act of 1917. This the Commissioner had done, but plaintiff complained of the result, on the ground that the percentage rate used was too high and the proper comparatives were not used. The Commissioner, in response to this complaint, reduced the assessment. In 1926 and 1927 plaintiff filed claims for refund setting forth grounds not including the one asserted in this suit. As I have said, not until 1929 did it assert that basis of claim.

The majority opinion recognizes that, ordinarily, an application by a taxpayer for assessment under Section 210 precludes him from obtaining a review by a court of the Commissioner's assessment made pursuant to that application. But it finds that plaintiff only made its application because of the refusal of the Commissioner to correct his error of assessing plaintiff on a calendar year basis. So far as the record shows, plaintiff never even asked the Commissioner to correct his error before applying for assessment under Section 210. I think plaintiff's application should be treated as its voluntary, deliberate act, which it should not now be permitted to repudiate in order to assert a basis of claim as to which it was silent during all the time that the defendant's agents had plaintiff's affairs under active consideration.

WHALEY, Chief Justice (dissenting).

I dissent from the decision of the majority of the court on the ground that this court does not have jurisdiction to review a special assessment determination of the Commissioner. That has been the consistent rule followed by the Supreme Court in all cases which have come before it for consideration. Williamsport Wire Rope Co. v. United States, 277 U.S. 551, 48 S.Ct. 587, 72 L.Ed. 985; Heiner v. Diamond Alkali Co., 288 U.S. 502, 53 S.Ct. 413, 77 L.Ed. 921, and Welch v. Obispo Oil Co., 301 U.S. 190, 57 S.Ct. 684, 81 L.Ed. 1033. In these cases the Supreme Court has pointed out that "in this delicate and complex phase of revenue administration" it is beyond the power of the courts to inquire into and disturb these acts of the Commissioner which Congress vested in an administrative agency as the final authority. The decisions of this court have been to the same effect. Central Iron & Steel Co. v. United States, 4 F.Supp. 113, 6 F.Supp.

115, 79 Ct.Cl. 56; Bradford & Co. v. United States, 6 F.Supp. 117, 79 Ct.Cl. 89; Michigan Iron & Land Co. v. United States, 10 F.Supp. 563, 81 Ct.Cl. 330, and Cuban-American Sugar Co. v. United States, 27 F.Supp. 307, 89 Ct.Cl. 215.

The reason given by the majority for this unusual and exceptional departure from the rule so long established and so consistently followed is that unlawful and wrongful acts drove the taxpayer to request special assessment and that it was not done voluntarily. In my view the facts are to the contrary. A controversy arose between the Commissioner and plaintiff over whether plaintiff's tax liability for 1917 should be determined on the calendar or fiscal-year basis under the provisions of Section 13(a) of the Revenue Act of 1916, which was the governing act. Plaintiff filed its returns on the fiscal-year basis, whereas the Commissioner held that since appropriate notice had not been given it should be held to a calendar-year basis. The Commissioner accordingly determined plaintiff's tax liability for the year 1917 on the latter basis. The facts found by the court show no protest against the annual basis when that final determination was made. What they show is that after the determination plaintiff requested special assessment and, since the determination had been made on the calendar-year basis, the request certainly must have been for a special assessment determination on a calendar-year basis. The Commissioner acceded to plaintiff's request, granted special assessment, and made his determination accordingly. When that determination was made, plaintiff advised the Commissioner of its satisfaction with the Commissioner's determination in these words:

"The assessment under the relief provisions of the Revenue Acts of 1917 and 1918 is not contested, but we wish to protest and appeal the rate allowed for the period ended September 30, 1918."

We have in these facts not only a request for special assessment by plaintiff, but an acceptance of the results reached for 1917, the year before the court, and only an objection to the comparatives used by the Commissioner for the nine months of 1918. The nine months' period of 1918 is not before the court.

In addition, between 1925 and 1929 plaintiff filed two claims for refund, both for the calendar-year 1917 and in neither of these claims was any protest made against the Commissioner's final determination on a calendar-year basis. It was not until April 25, 1929, that we have formal notification from plaintiff of its dissatisfaction with the annual basis of the Commissioner's determination. At that time suit was brought in the Federal district court for the Western District of South Carolina for the recovery of taxes for the year now before this court, and one of the grounds assigned was that the taxes should have been determined on a fiscal rather than on a calendar-year basis. In deciding that case adversely to plaintiff, the learned Judge Watkins held not only that plaintiff had not properly put the Commissioner on notice of its intention of raising the issue of the accounting basis but also that—

"Even if this question could now be raised, it could not avail in this case for the reason that I am unable to find where the corporations subject to this tax had proceeded to acquire any absolute or certain right to have their returns made and audited upon a fiscal year basis. As above stated, the testimony indicates that, because of the custom previously established, it would have been fair to permit this to be done. I fail to find, however, that any previous application was made to or consent given by the commissioner for a fiscal year accounting during 1917." [56 F.2d 180, 183, 184.]

Under such a state of facts, how it could be said there was any compulsion or arbitrary act on the part of the Commissioner in bringing about the special assessment determination passes my comprehension. In my opinion, the request was made by plaintiff in the ordinary way. Plaintiff accepted that determination and should not now be permitted to repudiate those acts. That it may have chosen unwisely in 1925 in seeking relief from the Commissioner's determination under a remedial statute, in which the results turned out differently from what it expected, is not something into which we can inquire at this time. The die was cast when the request was voluntarily made. Certainly more compelling circumstances than have been shown should be presented in order to justify a departure from a rule so well established and a judgment of such magnitude at this late date. In my opinion, the petition should be dismissed for lack of jurisdiction.